PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1789
_____

MOHAMMED SHUAIB KHAN; FARAS SHUAIB KHAN,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

On Petition for Review of a Decision and Order of
the Board of Immigration Appeals
(BIA Nos. A029-762-291 & A029-762-293)

Submitted January 27, 2012
_____

Before:  AMBRO, CHAGARES, and HARDIMAN, <u>Circuit
Judges</u>.


(Filed: August 14, 2012)

Bryan R. Pu-Folkes, Esquire
Suite 4
78-27 37th Avenue
Jackson Heights, NY 11372
        Counsel for Petitioners

Jacob A. Bashyrov, Esquire
Eric H. Holder, Jr., Esquire
Thomas W. Hussey, Esquire
Melissa K. Lott, Esquire
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
        Counsel for Respondent

_____

OPINION

_____

CHAGARES, Circuit Judge.

Mohammed Shuaib Khan ("Mohammed") and his son Faras Shuaib Khan ("Faras"), both citizens of Pakistan, petition for review of an order by the Board of Immigration Appeals ("BIA") denying their motion for an emergency stay of removal and motion to reopen their joint application for asylum, withholding of removal, or protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). Respondent United States Attorney General Eric Holder, Jr. has moved to dismiss the petition for review, arguing that we

lack jurisdiction to consider it because it was untimely and because it was filed before the BIA rendered a final decision on the petitioners' motions. We hold that we do have jurisdiction. We will, therefore, deny the Attorney General's motion to dismiss. However, we will also deny the petition for review.

I.

The petitioners initially were admitted to the United States as nonimmigrant visitors in December 1990. After they overstayed their visas, the United States Immigration and Naturalization Service initiated removal proceedings. Mohammed sought asylum, withholding of removal, and protection under the CAT, claiming that he was persecuted in Pakistan based on his membership in the Pakistan People's Party. Faras, who was a minor, was listed as a derivative beneficiary on Mohammed's asylum application. In January 2000, an Immigration Judge ("IJ") denied the petitioners' applications for asylum, withholding of removal, and protection under the CAT because they presented no credible evidence of past persecution or fear of future persecution. The BIA affirmed the denial on February 25, 2003, and the petitioners did not petition this Court for review of that denial. Instead, on October 21, 2010 — seven and one-half years later — they filed with the BIA a motion for an emergency stay of removal and a motion to reopen their case.

In the subsequent weeks, this case followed a somewhat unusual timeline. On March 29, 2011, the petitioners prematurely filed in this Court a petition for review, challenging the BIA's alleged refusal to adjudicate their motion for an emergency stay of removal and motion to

3

reopen. The petition was filed within hours of Mohammed's scheduled removal from the United States and after a clerk at the BIA allegedly notified the petitioners that the BIA would not consider their motion for an emergency stay of removal. On the same day, a panel of this Court granted the petitioners a temporary stay of removal and ordered the parties to submit briefs addressing this Court's jurisdiction over the petition for review. Thereafter, on March 31, 2011, the Attorney General moved to dismiss the petition for lack of jurisdiction, arguing that we were without jurisdiction to adjudicate the petition because it was (1) untimely with respect to the BIA's February 2003 decision and (2) premature with respect to the BIA's anticipated decision on the petitioners' motion for an emergency stay of removal and motion to reopen.

All of this occurred before the BIA issued a final decision on the petitioners' October 2010 motions. Finally, on April 12, 2011, the BIA denied the petitioners' October 2010 motion to reopen because it was untimely and also denied the motion for an emergency stay of removal. The following week, on April 18, 2011, the petitioners moved for leave to amend their response to the motion to dismiss in order to address this Court's jurisdiction in light of the April 12, 2011 BIA order. The next day, a panel of this Court granted the motion to amend, referred the motion to dismiss to a merits panel, and vacated the temporary stay of removal entered on March 29, 2011 because the petitioners had not shown a likelihood of success on the merits of their petition for review. We now consider whether we have jurisdiction and, if so, whether the petitioners are entitled to relief.

II.

4

The Attorney General contends that the petition for review should be dismissed because it was filed almost two weeks prior to the BIA's April 12, 2011 denial of the petitioners' motions, making it premature and depriving this Court of jurisdiction.[1] We have jurisdiction to review the BIA's denial of a motion to reopen unless 8 U.S.C. § 1252(a)(2) otherwise strips us of jurisdiction. Cruz v. Att'y Gen., 452 F.3d 240, 246 (3d Cir. 2006) ("Congress has explicitly granted federal courts the power to review 'any final order of removal' under 8 U.S.C. § 1252(a)(1). Implicit in this jurisdictional grant is the authority to review the denial of a motion to reopen any such final order."). The Government does not argue that any of the jurisdiction-stripping provisions in 8 U.S.C. § 1252(a)(2) deprive us of jurisdiction. The petitioners set forth a number of reasons why we had jurisdiction to review the BIA's alleged refusal to adjudicate their motions even before the April 12, 2011 order denying the motion to reopen. We need not address those arguments, however, because we conclude that we have jurisdiction to review the BIA's April 12, 2011 order, despite the petition for review having been filed before that order was issued.

---

[1] The Attorney General also argues that we lack jurisdiction over the petition for review because it was filed more than thirty days after the BIA's February 2003 final order of removal. Pursuant to 8 U.S.C. § 1252(b)(1), a petition for review must be filed no later than thirty days after a final order of removal. The petitioners maintain, however, that they are challenging only the denial of their October 2010 motions, not the BIA's February 2003 denial of relief. Thus, we reject the Attorney General's argument that we lack jurisdiction to consider the petition for review on this basis.

There are differing views among our sister Courts of Appeals with regard to whether premature petitions for review can ripen upon a final decision by the BIA. The Courts of Appeals for the Fifth and Sixth Circuits have held that a premature petition for review does not ripen into a timely petition when the final order is eventually issued. Moreira v. Mukasey, 509 F.3d 709, 713 (5th Cir. 2007); Jaber v. Gonzales, 486 F.3d 223, 228–30 (6th Cir. 2007). The Court of Appeals for the Second Circuit, in contrast, has held that a premature petition can ripen provided that the BIA later orders the petitioner removed and the Attorney General has not shown that he would be prejudiced. Herrera-Molina v. Holder, 597 F.3d 128, 132 (2d Cir. 2010). We have yet to decide this issue.

We opt to follow the Court of Appeals for the Second Circuit and will not dismiss the petition on the basis that it was filed two weeks prematurely. We have held in civil cases that, where there is no showing of prejudice by the adverse party and we have not taken action on the merits of an appeal, "'a premature notice of appeal, filed after disposition of some of the claims before a district court, but before entry of final judgment, will ripen upon the court's disposal of the remaining claims.'" DL Res., Inc. v. FirstEnergy Solutions Corp., 506 F.3d 209, 215 (3d Cir. 2007) (quoting Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 585 (3d Cir. 1999)). This rule is referred to as the "Cape May Greene doctrine" after the case in which it was first recognized, Cape May Greene, Inc. v. Warren, 698 F.2d 179, 184–85 (3d Cir. 1983). In Cape May Greene, the plaintiff filed its notice of appeal of the district court's grant of summary judgment while a cross-claim filed by the defendant was still pending. Id. at 184. While the appeal was pending, but before we had taken any

6

action on the appeal, the parties dismissed the cross-claim and the district court entered a final judgment dismissing the case. Id. In holding that the notice of appeal ripened upon entry of the final judgment, we relied on the United States Supreme Court's pronouncement that "'practical, not technical considerations are to govern the application of principles of finality.'" Id. at 185 (quoting Gillespie v. U.S. Steel Corp., 379 U.S. 148, 152 (1949)).

Similarly, in Lazy Oil Co. v. Witco Corp., 166 F.3d at 585, the objectors to a class action settlement filed a notice of appeal over two months before the district court gave its final approval on all elements of the settlement and entered a final judgment. In choosing to apply the Cape May Greene doctrine, we explained that, "[f]or us to decline jurisdiction in this appeal would elevate a mere technicality above the important substantive issues here involved, as well as the right of the parties in this case to have their dispute resolved on its merits." Id. at 587. Motivated by such concerns, we have continued to allow a premature notice of appeal to ripen in cases where the adverse party was not prejudiced by the premature filing and where we have yet to adjudicate the appeal. E.g., DL Res., Inc., 506 F.3d at 215. But see ADAPT of Phila. v. Phila. Hous. Auth., 433 F.3d 353, 361–65 (3d Cir. 2006) (holding that the Cape May Greene doctrine is inapplicable to appeals from interlocutory orders, such as discovery orders, and that appeals from interlocutory orders may not ripen upon entry of final judgment).[2]

---

[2]    Although Federal Rule of Appellate Procedure 4(a)(4)(B)(ii) allows for the ripening of a notice of appeal that is filed while certain motions are pending once those motions are adjudicated, we have opined that "Rule 4 does not

7

We will apply that same rule to the circumstances presented in this case. So long as the Attorney General has not shown that he will suffer prejudice resulting from the premature filing of a petition for review, and we have yet to take action on the merits of the appeal, a premature petition for review can ripen once the BIA issues a final order on a motion to reopen. We see no reason to treat premature petitions for review from final orders of removal differently than we have treated premature notices of appeal in other types of cases.[3]

---

exclusively govern every 'situation in which a premature notice of appeal will ripen at a later date.'" DL Res., Inc., 506 F.3d at 215 (quoting Lazy Oil Co., 166 F.3d at 587). We recognize that some of our sister Courts of Appeals have declined to join us in this regard. See Brown v. Columbia Sussex Corp., 664 F.3d 182, 188 (7th Cir. 2011) (holding that "premature notices of appeal in civil cases can only ripen when under the auspices of [Federal Rule of Appellate Procedure] 4(a)(2), as defined by the Supreme Court in [FirsTier Mortg. Co. v. Investors Mortg. Ins. Co., 498 U.S. 269 (1991)]"); Outlaw v. Airtech Air Conditioning & Heating, Inc., 412 F.3d 156, 160 n.2 (D.C. Cir. 2005) (same); United States v. Cooper, 135 F.3d 960, 963 (5th Cir. 1998) (applying analogous reasoning in a criminal appeal); Serine v. Peterson, 989 F.2d 371, 372–73 (9th Cir. 1993) (same).

[3] Likewise, we have exercised appellate jurisdiction in certain criminal cases where a notice of appeal was filed after conviction but before sentencing, so long as the notice of appeal adequately advised the government of what was being appealed, the premature filing did not cause prejudice, and the notice of appeal was not filed extraordinarily prematurely. See, e.g., United States v. Hashagen, 816 F.2d 899, 903–06

Turning to this case, we hold that the premature petition for review ripened and we have jurisdiction to adjudicate it. While technically the petitioners should have filed a new petition once the BIA issued its final order on the motion to reopen and motion for an emergency stay of removal on April 12, 2011, the BIA's decision denying the motions was entered only two weeks after the petitioners filed their petition for review and the Attorney General had plenty of time to respond to the petition. The Attorney General has made no argument that he was prejudiced by the premature filing and we do not perceive any prejudice. Although the petition for review challenged the BIA's refusal to adjudicate the petitioners' motions rather than the denial of those motions, the petitioners amended their response to the Attorney General's motion to dismiss after the BIA denied the motions. We will treat the petitioners' amended response to the Attorney General's motion to dismiss as updating the petition for review into a challenge to the BIA's April 12, 2011 order. Finally, we had not taken action on the merits before the BIA entered its final disposition. In these circumstances, we conclude that it would be unfair to dismiss the petition due to its premature filing.

The Attorney General argues that this case is distinguishable from Cape May Greene and Lazy Oil Co., because those were appeals from interlocutory orders that later became final orders while, here, there was no order by

_____

(3d Cir. 1987) (en banc). But see Gov't of the V.I. v. Leonard A., 922 F.2d 1141, 1146 n.6 (3d Cir. 1991) (holding that notice of appeal did not ripen because it did not adequately notify the government of what was being appealed).

9

the BIA at the time the petitioners filed their petition. We do not find that distinction to be dispositive in this case. While there may be circumstances in which there is no order from the BIA and the petition is so premature that allowing it to ripen would prejudice the Attorney General, this is not such a case. Again, the Attorney General has alleged no prejudice caused by the premature petition for review. In addition, the petitioners allege, and the Attorney General does not deny, that a clerk at the BIA informed the petitioners on March 29, 2011 that the BIA would not rule on their motion for an emergency stay of removal. Given that the petitioners were scheduled to leave for Pakistan that day, it is understandable why the petitioners would interpret that message as an effective denial of their motion for an emergency stay of removal and motion to reopen. Thus, the Attorney General's proposed distinction is not compelling.

We hold, therefore, that we have jurisdiction over the ripened petition for review and we will deny the Attorney General's motion to dismiss.

### III.

While we hold in favor of the petitioners on the jurisdictional question, we nonetheless conclude that they cannot prevail on the merits of their petition for review. We review the BIA's denial of a motion to reopen for abuse of discretion. Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004).[4] We will not reverse the BIA's discretionary rulings

---

[4] We need not address the BIA's denial of the petitioners' motion for an emergency stay of removal because the petitioners did not challenge that denial in their appellate

"'unless they are found to be arbitrary, irrational, or contrary to law.'" Id. (quoting Tipu v. INS, 20 F.3d 580, 582 (3d Cir. 1994)). A motion to reopen must be filed within ninety days of a final order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i). The petitioners do not dispute that their motion to reopen was untimely, as the final order of removal was entered on February 25, 2003 and the motion to reopen was not filed until October 21, 2010. Instead, they seek application of the changed country conditions exception to the ninety-day deadline set forth in 8 U.S.C. § 1229a(c)(7)(C)(ii), which provides that

> [t]here is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for relief under sections 1158 or 1231(b)(3) of this title and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding.

Sections 1158 and 1231(b)(3) — referenced above — outline the requirements for asylum and withholding of removal, respectively.

---

briefs. See Skretvedt v. E.I. DuPont DeNemours, 372 F.3d 193, 202–03 (3d Cir. 2004) ("[A]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court." (quotation marks omitted)).

11

The petitioners seek to reopen under the changed country conditions exception based on allegations that extremist violence has increased in Pakistan; the Pakistani government is less able to control that violence than in 2000, when the petitioners had their original hearing; the petitioners now belong to the Awami National Party ("ANP"), which is targeted by extremists in Pakistan; the petitioners' hometown of Bahawalpur has become more dangerous; Pakistan has become more anti-American since 2000; and the petitioners now suffer from mental illnesses. With their motion to reopen, the petitioners submitted a report published on July 1, 2009 by the University of Maryland entitled "Pakistani Public Opinion on the Swat Conflict, Afghanistan, and the US." The report includes the results of a poll which found that 81% of Pakistanis believed that the Taliban and other religious militants constituted a "critical threat" to the country. Two years earlier, only 34% percent had responded affirmatively to that question. Among other documents, the petitioners also provided a number of articles reporting violence and instability in Pakistan; a 2009 United States Department of State Human Rights Report documenting human rights abuses and politically motivated killings by extremists in Pakistan; information on the treatment of persons with mental illness in Pakistan; and the petitioners' medical records.

For the changed country conditions exception in 8 U.S.C. § 1229a(c)(7)(C)(ii) to apply, the petitioners must show that the new evidence they submit is material to their application for relief. To meet the materiality requirement, the petitioners must allege facts that "'would be sufficient, if proved, to change the result'" of their application. Kaur v. BIA, 413 F.3d 232, 234 (2d Cir. 2005) (quoting Ballenilla-Gonzalez v. INS, 546 F.2d 515, 520 (2d Cir. 1976)). Even if

12

an alien can demonstrate changed country conditions, a motion to reopen will not be granted unless the petitioner establishes prima facie eligibility for relief by "produc[ing] objective evidence showing a reasonable likelihood that he can establish that he is entitled to relief." Guo, 386 F.3d at 563 (quotation marks and brackets omitted); see 8 C.F.R. § 1003.2(c)(1) ("A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material . . . .").

To prevail on an asylum claim,[5] an alien must show that he or she "is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [his or her native country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To establish a well-founded fear of persecution, the alien must show both a subjective fear and "that a reasonable person in his position would fear persecution, either because he would be individually singled out for persecution or because there is a pattern or practice in his home country of persecution against a group of which he is a member." Huang v. Att'y Gen., 620 F.3d 372, 381 (3d Cir. 2010) (quotation marks omitted). "The source of the persecution must be the government or forces that the government is unwilling or unable to control." Ahmed v.

---

[5] Because the petitioners have failed to make any argument with regard to their claims for withholding of removal and relief under the CAT, we deem such arguments waived and we will not address them. See Skretvedt, 372 F.3d at 202–03.

13

Keisler, 504 F.3d 1183, 1191 (9th Cir. 2007). In order to prove a reasonable fear of future persecution, the petitioners must produce "credible, direct, and specific evidence . . . that would support a reasonable fear of persecution." Id. (quotation marks omitted). The BIA's underlying factual determinations are entitled to broad deference under the substantial evidence standard, "and will be upheld to the extent [they are] supported by reasonable, substantial and probative evidence on the record on as a whole." Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004) (quotation marks omitted). In considering motions to reopen, "[t]he critical question is . . . whether circumstances have changed sufficiently that a petitioner who previously did not have a legitimate claim for asylum now has a well-founded fear of future persecution." Malty v. Ashcroft, 381 F.3d 942, 945 (9th Cir. 2004).

We agree with the BIA that the petitioners cannot avail themselves of the changed country conditions exception in 8 U.S.C. § 1229a(c)(7)(C)(ii) to the time limit for filing a motion to reopen. With respect to much of the evidence they submitted with their motion to reopen, the petitioners have not met their heavy burden of demonstrating that the evidence is material to their application for asylum. The BIA held that the petitioners' evidence of violence towards members of the Pakistan People's Party ("PPP") was not material to their asylum application because the petitioners had not addressed the IJ's finding in January 2000 that there was no credible evidence that the petitioners belonged to the PPP. The BIA did not err in reaching that conclusion. Because the petitioners have not attempted to rehabilitate their credibility following the IJ's adverse credibility finding with respect to their membership in the PPP, they have not shown "a

14

reasonable likelihood that [they] can establish that [they are] entitled to relief" on the basis that they would be targeted as members of the PPP. Guo, 386 F.3d at 563 (quotation marks omitted); see also Kaur, 413 F.3d at 234 (upholding BIA's conclusion that the "evidence submitted by petitioner in support of her motion was not 'material' because it did not rebut the adverse credibility finding that provided the basis for the IJ's denial of petitioner's underlying asylum application."). Without credible evidence that the petitioners belonged to the PPP, the petitioners cannot prevail on an asylum claim based on membership in that group.

Nor did the BIA err in relying on the IJ's adverse credibility determination. "We have emphasized that adverse credibility findings are afforded deference only if they are supported by specific cogent reasons" that are "substantial and bear a legitimate nexus to the finding." Guo, 386 F.3d at 562–63 (quotation marks omitted). The petitioners have not disputed that the adverse credibility determination was supported by the record. The adverse credibility determination in this case was also directly relevant to the merits of the asylum application that the petitioners seek to reopen. See id. at 563 (explaining that there must be a sufficient nexus between the adverse credibility finding and the BIA's holding). Thus, it was appropriate for the BIA to defer to the IJ's credibility determination.

The BIA also held that the petitioners could not avail themselves of the changed country conditions exception in 8 U.S.C. § 1229a(c)(7)(C)(ii) on the basis that, since their hearing in 2000, they had become members of the ANP in the United States and that their membership in that group would subject them to persecution in Pakistan. The petitioners have

15

submitted evidence indicating that members of the ANP have been targeted by extremists. The record contains the 2009 United States Department of State Human Rights Report on Pakistan, which reported that 100 political workers, some of whom belonged to the ANP, were killed in Karachi, Pakistan as the result of interparty clashes. The report also noted that members of the ANP had been the targets of terrorist attacks.

Despite that evidence, we agree with the BIA that this argument is unavailing. This claim for asylum relief is based on changes in the petitioners' personal circumstances in the United States and is not "based on changed country conditions" in Pakistan. 8 U.S.C. § 1229a(c)(7)(C)(ii). The petitioners' choice to engage in such political activities after being ordered deported does not support application of the changed country conditions exception in 8 U.S.C. § 1229a(c)(7)(C)(ii). See Haddad v. Gonzales, 437 F.3d 515, 517 (6th Cir. 2006) (holding that petitioner's divorce was a "purely personal change in circumstances that does not constitute changed conditions or circumstances in Jordon"); Zheng v. Dep't of Justice, 416 F.3d 129, 130–31 (2d Cir. 2005) (holding that the birth of petitioner's children did not constitute changed country conditions). The Court of Appeals for the Second Circuit has explained why application of 8 U.S.C. § 1229a(c)(7)(C)(ii) cannot be based on changed personal circumstances alone:

> It is quite a different situation, however, where a petitioner is seeking to reopen his asylum case due to circumstances entirely of his own making after being ordered to leave the United States. In such a situation, it would be ironic, indeed, if petitioners . . . who have remained in

16

the United States illegally following an order of deportation[] were permitted to have a second and third bite at the apple . . . . This apparent gaming of the system in an effort to avoid deportation is not tolerated by the existing regulatory scheme. The law is clear that a petitioner must show changed country conditions in order to exceed the 90-day filing requirement for seeking to reopen removal proceedings. A self-induced change in personal circumstances cannot suffice.

Wang v. BIA, 437 F.3d 270, 274 (2d Cir. 2006) (citations omitted). We agree that, where an alien intentionally alters his or her own circumstances, knowing that he or she has been ordered removed from the United States, 8 U.S.C. § 1229a(c)(7)(C)(ii) does not properly apply. See Larngar v. Holder, 562 F.3d 71, 76 (1st Cir. 2009).

We also conclude that the BIA did not err in finding that the evidence of increased anti-American sentiment in Pakistan was immaterial to the petitioners' case. Although we acknowledge that Faras has been in the United States for the majority of his life and that both have been here for over twenty years, there is no cognizable social group of "secularized and westernized Pakistanis perceived to be affiliated with the United States." Ahmed v. Holder, 611 F.3d 90, 94 (1st Cir. 2010).

> [F]or a proposed social group to achieve cognizability (that is, to come within the compass of the statute), its members must share at least one common, immutable characteristic.

17

> In addition, the shared characteristic or characteristics must make the group generally recognizable in the community and must be sufficiently particular to permit an accurate separation of members from non-members.

Id. (citation omitted); see Valdiviezo-Galdamez v. Att'y Gen., 502 F.3d 285, 291 (3d Cir. 2007). The social group that the petitioners propose — of Pakistanis who have "become more acculturated to American culture, language and values than those of Pakistan" — calls for "subjective value judgments" and, thus, is not an easily definable group. See Ahmed, 611 F.3d at 94–95. "Americanization is not an immutable characteristic." Lizama v. Holder, 629 F.3d 440, 447 (4th Cir. 2011). Nor is having an affiliation with or connection to the United States. Ahmed, 611 F.3d at 94. The social group that the petitioners propose is too amorphous to support an asylum application. Moreover, the evidence submitted by the petitioners discusses anti-American sentiment in Pakistan but it does not specifically report persecution of Pakistanis who have returned from the United States to Pakistan. Thus, the petitioners have not shown "a reasonable likelihood that [they] can establish that [they are] entitled to relief" on this basis. Guo, 386 F.3d at 563.

We further hold that the BIA's finding that the petitioners failed to provide sufficient medical information to support a prima facie case for asylum was supported by substantial evidence. The petitioners provided a medical record showing that, on February 4, 2011, Faras was diagnosed with bipolar disorder. The record also contains an evaluation from a New Jersey hospital from November 2010 stating that Mohammed suffered from mental depression due

18

to anxiety and a report from a different hospital on March 21, 2011 diagnosing Mohammed with "adjustment disorder with mixed emotions." On the March 2011 hospital visit, Mohammed was discharged after his condition improved without any recommendation of follow-up care.

The few medical documents the petitioners submitted provide very limited information about their mental health. More importantly, however, the petitioners did not establish how those particular diagnoses would cause them to be persecuted in Pakistan. The evidence the petitioners submitted indicates that it is difficult to obtain mental health treatment in Pakistan. The lack of access to mental health treatment alone, however, does not create a well-founded fear of persecution. See Ixtlilco–Morales v. Keisler, 507 F.3d 651, 655–56 (8th Cir. 2007) (upholding the BIA's determination that the alien had "failed to establish that inadequacies in health care for HIV-positive individuals in Mexico was an attempt to persecute those with HIV"). While some of the evidence in the record describes abuse of psychiatric patients and the social stigma attached to mental illness in Pakistan, we conclude that the BIA's finding that the petitioners did not sufficiently demonstrate that they had a mental illness that would subject them to mistreatment upon return to Pakistan was supported by substantial evidence.

Finally, the petitioners argue that the BIA's failure to address their evidence of changed country conditions was a procedural violation. We have held that "the BIA must actually consider the evidence and argument that a party presents." Zheng v. Att'y Gen., 549 F.3d 260, 266 (3d Cir. 2008) (quotation marks omitted). The BIA must engage in some analysis of the petitioner's evidence but may do so in a

19

"'summary fashion.'" Id. at 268 (quoting Wang, 437 F.3d at 275). "The BIA must show that it reviewed the record and considered the evidence upon which the IJ relied, and it must explain why the record warrants [its conclusion]." Huang, 620 F.3d at 387. Although the BIA's opinion in this case does not specifically mention all of the evidence that the petitioners submitted, it demonstrates that the BIA reviewed the record and sets forth in summary fashion why the record supports its conclusion. Thus, the BIA sufficiently addressed the petitioners' claims and evidence.

For all of these reasons, we are not persuaded that the BIA abused its discretion in finding that the petitioners' motion to reopen was untimely and that the changed country conditions exception in 8 U.S.C. § 1229a(c)(7)(C)(ii) was inapplicable.

IV.

In accordance with the foregoing, we will deny the Attorney General's motion to dismiss and we will deny the petition for review.