**IMG-109** **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1859
_____

MARCELO F. CARBONE BALL,
                                          Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                                          Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-384-266)
Immigration Judge:  Honorable Mirlande Tadal
_____

Submitted Under to Third Circuit LAR 34.1(a)
On September 5, 2012

Before:  SMITH, HARDIMAN AND ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 12, 2012)
_____

O P I N I O N
_____

PER CURIAM

    The petitioner, a native and citizen of Uruguay, seeks review of a Board of

Immigration Appeals (BIA) decision denying his application for withholding of removal.

We have jurisdiction under 8 U.S.C. § 1252(a),[1] reviewing the agency's factual

determinations using an "extraordinarily deferential standard," under which they will be

upheld "unless any reasonable adjudicator would be compelled to conclude to the

contrary." Garcia v. Att'y Gen., 665 F.3d 496, 502 (3d Cir. 2011) (citations omitted).

Having carefully examined the record, we conclude that substantial record evidence

supports the BIA's determination that the domestic violence endured, witnessed, and

feared by the petitioner (and his family) was not "persecution" because it was committed

neither by the Uruguayan government nor by forces it was unable or unwilling to control.

Administrative Record (A.R.) 4–5; Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005).[2]

The petitioner testified that the Uruguayan police were responsive to his family's

complaints against his abusive father, if not to the extent he desired. A.R. 123–25, 135.

The various country reports submitted to the agency, while equivocal, can be plausibly

---

[1] We agree with the Government that we lack jurisdiction to address the petitioner's asylum and Convention Against Torture claims, which were alternately unexhausted and waived. See 8 U.S.C. § 1252(d)(1); Khan v. Att'y Gen., No. 11-1789, 2012 U.S. App. LEXIS 16946, at *14 n.4 (3d Cir. Aug. 14, 2012); see also 8 U.S.C. § 1158(a)(3) (limiting judicial review of asylum untimeliness determinations).

[2] Fiadjoe v. Att'y Gen., 411 F.3d 135 (3d Cir. 2005), which also dealt with horrific domestic abuse, is distinguishable from the present situation. There, we observed that the BIA had "totally ignored the evidence in the record that establishes the deep hold that the Trokosi religion has upon substantial elements of the Ghanian people," and pointed out that it was not "easy to escape from Trokosi slavery." Id. at 161. Furthermore, the "most recent State Department Report covering Ghana show[ed] how futile resort to the police would have been." Id. Here, not only does the record not compel a conclusion of hypothetical police noninterference in domestic-violence situations, the police *did* actually intervene upon a formal complaint. While a different evidentiary proffer could

2

read to support the BIA's conclusion that the official Uruguayan response to domestic violence, while achieving "mixed results," reflects the country's "efforts to criminalize such acts and to protect the victims." A.R. 6. "Where the record supports plausible but conflicting inferences in an immigration case, the . . . choice between those inferences is, a fortiori, supported by substantial evidence." De Hincapie v. Gonzales, 494 F.3d 213, 219 (1st Cir. 2007). Because the agency's decision is sustainable on this ground, we need not reach its alternative holdings and the petitioner's arguments against them. This petition for review will be denied.

---

nudge this case closer to Fiadjoe, on the record before the agency, which must be the basis of our ruling, see 8 U.S.C. § 1252(b)(4)(A), we cannot say that Fiadjoe controls.