**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2452
_____

SHU RONG CAI,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(A099-564-558)
Immigration Judge: Honorable Frederic G. Leeds

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 15, 2012

Before:  AMBRO, JORDAN and BARRY, Circuit Judges

(Opinion filed:  November 16, 2012)
_____

OPINION
_____

PER CURIAM.

Shu Rong Cai, a native and citizen of China, petitions for review of an order

entered by the Board of Immigration Appeals ("BIA") denying her motion to reopen

1

removal proceedings. We will deny Cai's petition for review.

In 2001, Cai entered the United States without inspection, and in 2005 she applied for asylum, withholding of removal, and Convention Against Torture protection. Cai claimed to fear persecution under China's population control policies due to the birth of her two children in the United States. Cai conceded removability, and an Immigration Judge ("IJ") denied her applications for relief from removal after conducting an evidentiary hearing. In October 2008, the BIA dismissed Cai's appeal. This Court denied Cai's petition for review. Shu Rong Cai v. Att'y Gen., 356 F. App'x 593 (3d Cir. 2009).

In September 2011, Cai filed a motion to reopen. She claimed that she became a practicing Catholic in 2011, that conditions for Catholics in China have worsened since her hearing before the IJ, and that she would likely face persecution on account of her religious beliefs. The BIA denied the motion to reopen as untimely filed, and it concluded that Cai failed to submit evidence indicating that she would face persecution in China or that the conditions there have materially changed since her 2007 hearing. Cai timely filed this petition for review.

We have jurisdiction under 8 U.S.C. § 1252(a). We review the BIA's denial of a motion to reopen for abuse of discretion. Luntungan v. Att'y Gen., 449 F.3d 551, 555 (3d Cir. 2006) (citing Caushi v. Att'y Gen. 436 F.3d 220, 225 (3d Cir. 2006). "We will not reverse the BIA's discretionary rulings 'unless they are found to be arbitrary, irrational, or contrary to law.'" Khan v. Att'y Gen., 691 F.3d 488, 495 (3d Cir. 2012)

2

(quoting Jian Lian Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004).

Cai does not dispute the untimeliness of her motion to reopen, which had to be filed within ninety days of the final administrative removal order.  8 U.S.C. § 1229a(c)(7)(C)(i).  Instead, Cai invokes the changed country conditions exception, which provides that the ninety-day period is inapplicable where the movant seeks reopening based on evidence of "changed country conditions arising in the country of nationality … if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding."  8 U.S.C. § 1229a(c)(7)(C)(ii).

Cai supported her motion to reopen with the following documents:  her own affidavit; a new asylum application; birth and baptismal certificates; a letter from her church in the U.S.; photographs of her church activities; a Village Committee notice; an affidavit from the wife of Cai's cousin in China; a 2007 State Department report; and other "background" materials.  Cai contends that this evidence established her prima facie eligibility for asylum based on a fear of future persecution in China due to her newly adopted religion.  We discern no abuse of discretion in the BIA's decision to reject Cai's evidence as insufficient to warrant reopening.

The BIA observed that Cai's own affidavit "is speculative, not based, in part, on personal knowledge, and does not demonstrate that [Cai]'s possible treatment in China, including arrest, would amount to persecution."  A.R. at 3-4.  Cai concedes that her assertions are based on "facts that she has never directly experienced," Petitioner's Br. at 14, but she argues that her "only source of information is based on what she was told by

3

her family members in China," id. Whether or not Cai's assertions are speculative, she failed to make a prima facie showing that she would face persecution in China.

Cai's professed fear of persecution derives mainly from the Village Committee notice and the affidavit prepared by her cousin's wife. The purported notice from the "Changle City Tantou Town Yuan Dai Village Committee" indicates that Chinese officials intercepted mail that Cai had sent to the wife of her cousin, and in light of criticism that Cai expressed for China's policy toward non-governmental Catholic churches, the Village Committee ordered the wife of Cai's cousin "to urge Cai … to immediately stop her reactionary conduct of inciting Catholics in China to complain against the Chinese government's current policy on religion and to return to China to accept stringent punishment from the government." A.R. at 96. Absent compliance, the Village Committee added, Cai "would receive severe punishment and be imprisoned." Id. Similarly, the unsworn "affidavit" from the wife of Cai's cousin, who claims to have been visited by village officials, asserts that Cai "would definitely be arrested, sentenced, imprisoned and brutally persecuted by the Chinese government." Id. at 95.

The BIA reasonably concluded that these documents – with their vague references to arrest, punishment, and imprisonment – did not warrant reopening given the absence of evidence suggesting that Cai would face treatment rising to the level of persecution. See Jarbough v. Att'y Gen., 483 F.3d 184, 191 (3d Cir. 2007) (explaining that "[p]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive," and that "[a]busive treatment and harassment, while always deplorable, may

4

not rise to the level of persecution") (internal citation and quotation marks omitted); see also Pllumi v. Att'y Gen., 642 F.3d 155, 161 (3d Cir. 2011) ("The burden of proof on a motion to reopen is on the alien to establish eligibility for the requested relief.") (citing En Hui Huang v. Att'y Gen. 620 F.3d 372, 389 (3d Cir. 2010); 8 C.F.R. § 1003.2(c)).

Furthermore, the record supports the BIA's conclusion that Cai's "evidence does not indicate that conditions for members of unregistered Catholic churches in China have worsened or otherwise materially changed since [Cai]'s previous hearing in 2007." A.R. at 4. Cai relied primarily upon a State Department report issued in 2007, the same year as her hearing before the IJ. That report does not reflect a change in conditions in China post-dating the hearing, and Cai offers no argument at all on this appeal to question the BIA's finding regarding the absence of a material change in conditions in China.[1]

We have considered Cai's remaining contentions but conclude that they are without merit and warrant no separate discussion. Based on the foregoing, we will deny the petition for review.

---

[1] Although the BIA did not reach nor rely on this issue, we note that our intervening precedent indicates that Cai's decision to begin practicing a new religion after she initially was denied relief from removal constitutes a change in her personal circumstances in the United States, which on its own is insufficient to establish changed country conditions for purposes of 8 U.S.C. § 1229a(c)(7)(C)(ii). See Khan v. Attorney General, 691 F.3d 488, 497–98 (3d Cir. 2012) (holding the "choice to engage in [certain] political activities after being ordered deported does not support application of the changed country conditions exception"). Our holding in Khan was consistent with earlier decisions that applied the same reasoning to changes in other personal circumstances. See, e.g., Liu v. Att'y Gen., 555 F.3d 145, 150–51 (3d Cir. 2009) (birth of children); Haddad v. Gonzales, 437 F.3d 515, 517 (6th Cir. 2006) (marriage status). Simply put, this type of "self-induced change in personal circumstances cannot suffice." Wang v. BIA, 437 F.3d 270, 274 (2d Cir. 2006)."