**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 12-2668
_____

XIONG JIAN HUANG,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A77-552-226)
Immigration Judge:  Honorable Donald Vincent Ferlise

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 20, 2013

Before:  FUENTES, HARDIMAN and VAN ANTWERPEN, Circuit Judges

(Opinion filed:  March 4, 2013)

_____

OPINION

_____

PER CURIAM

        Xiong Jian Huang is a citizen of China who entered the United States without

inspection in 1998.  He filed an application for asylum, withholding of removal and

protection under the United Nations Convention Against Torture, alleging persecution

under China's coercive population control policies. Following a merits hearing in 2002, the Immigration Judge ("IJ") denied relief based in part on an adverse credibility determination. In December 2003, the Board of Immigration Appeals ("BIA" or "Board") affirmed without opinion. Huang next filed a motion for reconsideration, which the BIA denied as untimely.

In October 2011, Huang filed a motion to reopen, asserting that he began practicing Christianity in 2010 and that he will be persecuted in China because of his religious beliefs. The Board concluded that the motion to reopen was untimely. The BIA also held that the evidence Huang submitted with his motion to reopen "is not sufficient to demonstrate that the treatment of members of unregistered Christian churches in China has materially changed, that the Chinese government is or will become aware of his newly adopted religious practice, or that he will become a specific target for persecution in China on the basis of his Christian beliefs." Finally, the BIA refused to consider Huang's challenge to the IJ's original adverse credibility determination, rejected Huang's allegations of ineffective assistance of counsel, and declined to exercise its sua sponte authority to reopen the proceedings.[1] Accordingly, the BIA denied the motion to reopen. Huang filed a timely petition for review.

---

[1] Huang has not challenged these determinations. Bradley v. Att'y Gen., 603 F.3d 235, 243 n.8 (3d Cir. 2010) (holding that arguments not raised in opening brief are waived). He does suggest, however, that the Board improperly discounted evidence submitted with his motion to reopen based on the prior adverse credibility finding. It is clear, though, that the adverse credibility determination was not a factor in the Board's evaluation of the evidence allegedly demonstrating changed conditions in China.

We have jurisdiction pursuant to 8 U.S.C. § 1252. The decision to deny a motion to reopen is reviewed for abuse of discretion. Oliva-Ramos v. Att'y Gen., 694 F.3d 259, 270 (3d Cir. 2012). Under this standard, the BIA's decision may be reversed only if it is "arbitrary, irrational, or contrary to law." Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002).

An alien generally may file only one motion to reopen and must file it with the BIA "within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i); see also 8 C.F.R. § 1003.2(c)(2). Huang's motion to reopen, filed almost 8 years after the BIA entered the final removal order, was clearly untimely. The time limitation does not apply to motions to reopen that rely on evidence of "changed country conditions arising in the country of nationality . . . if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); see also 8 C.F.R. § 1003.2(c)(3)(ii). Thus, Huang would be eligible to file an untimely asylum application in reopened proceedings based on his Christian faith, if he is able to show changed country conditions since the time of his hearing before the IJ.[2] Filja v. Gonzales, 447 F.3d 241, 251-52 (3d Cir. 2006).

---

[2] Huang does not dispute that his conversion to Christianity was a change in his personal circumstance, rather than a change in country conditions that would support reopening. See Khan v. Att'y Gen., 691 F.3d 488, 497-98 (3d Cir. 2012) (stating that the "choice to engage in [certain] political activities after being ordered deported does not support application of the changed country conditions exception").

3

Huang complains that the Board failed to adequately consider and weigh the evidence that he submitted. But he does not cite specifically any overlooked evidence potentially showing changed country conditions. Moreover, as discussed below, after reviewing the record, we are satisfied that the BIA properly identified his evidence, sufficiently described its contents, and explained why it does not demonstrate that country conditions have materially changed. Huang v. Att'y Gen., 620 F.3d 372, 387 (3d Cir. 2010) ("The BIA must show that it reviewed the record and considered the evidence upon which the IJ relied, and it must explain why the record warrants [its conclusion].").

The Board did not abuse its discretion in determining that Huang did not qualify for the changed country conditions exception to the time requirement for filing a motion to reopen. In support of his motion to reopen, Huang submitted, inter alia, a personal affidavit, a letter from his wife, and a Village Committee notice that was sent to his wife. The BIA properly concluded that this material was not "persuasive evidence of materially 'changed circumstances' in China regarding religion." Although Huang's affidavit stated that he "would be punished more seriously and would be sent to jail" because of the religious material that he attempted to send to his wife in China, his allegation is speculative and it is unclear whether the punishment that he allegedly faces amounts to persecution. Similarly, the letter from Huang's wife, which is unsworn, is based solely on speculation that Huang will be "arrested, jailed, sentenced[,] and further persecuted" if he returns to China. The Village Committee notice suggests that the Chinese government is aware of Huang's newly-adopted religious practice, but the notice is unauthenticated

4

and states only that Huang "will be punished" because he "tried to mail back to China some untrue reports" regarding religious persecution. The BIA did not err in refusing to credit this evidence. Chen v. Gonzales, 434 F.3d 212, 218 (3d Cir. 2005) (noting that only corroboration was a letter from a family member who did not witness incident and who was not subject to cross examination).

We also agree that Huang's evidence is insufficient to establish that conditions had worsened in China for Christians since the time of his merits hearing in 2002. Huang's motion to reopen relied in part on the 2007 State Department's Profile of Asylum Claims and Conditions in China, which stated that the "[p]olice have closed many unregistered churches," and that in some areas "local security officials use threats, demolition of unregistered property, interrogation, arrest, imprisonment, and sometimes severe physical abuse to target unregistered religious leaders and their followers." Importantly, however, evidence in the record from Huang's 2002 merits hearing suggested that harassment and repression of unregistered churches was already prevalent. For example, the 1998 State Department Profile of Asylum Claims and Conditions in China indicated that "[u]nregistered religious activity is illegal and is a punishable offense," that since 1994 the police have stepped up a campaign to require all religious groups to register, and that in 1996 the "central Government released a policy directive that launched a national campaign to suppress unauthorized religious groups and social organizations." In sum, we conclude that no reasonable factfinder would be compelled to find that there has been a material worsening since 2002 of human rights abuses committed against Christians in

5

China.

For the foregoing reasons, we will deny the petition for review.