NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3237
_____

GAZMEND MANI;
ANILA SELHANI MANI,

Petitioners

VS.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A077-654-655 & A077-654-654)
Immigration Judge:  Honorable Donald V. Ferlise
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 12, 2014

Before: HARDIMAN, NYGAARD and ROTH, Circuit Judges

(Opinion filed: April 15, 2014)

_____

OPINION
_____

PER CURIAM

Lead petitioner Gazmend Mani and his wife, Anila Selhani Mani,[1] petition for review of the Board of Immigration Appeals' ("BIA") decision denying their motion to reopen their consolidated removal proceedings. For the reasons that follow, we will deny the petition.

## I.

In 2000, Petitioners, who are natives and citizens of Albania, arrived in the United States and sought admission. Shortly after their arrival, they were placed in removal proceedings and charged with being inadmissible for (1) not possessing valid entry documents at the time they sought admission, see 8 U.S.C. § 1182(a)(7)(A)(i)(I), and (2) willfully misrepresenting their identity when they sought admission, see 8 U.S.C. § 1182(a)(6)(C)(i). Petitioners conceded the first charge and the Immigration Judge ("IJ") sustained the latter charge. As relief from removal, Petitioners sought asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). At the merits hearing before the IJ, Mani testified that he had owned a clothing shop in Albania. In December 1999, someone put a letter under Mani's door demanding money. A few days later, men wearing black masks and carrying assault rifles came to his shop and collected the money. This series of events happened again in January 2000. In February 2000, Mani received a third letter, this one demanding even more money. Mani did not have the money needed to meet this third demand, so he decided to close the shop. He and Selhani left Albania shortly thereafter.

_____

[1] For clarity's sake, we will refer to Gazmend Mani as "Mani" and Anila Selhani Mani as

Mani further testified that, although he had never been a member of Albania's

Democratic Party, he had participated in some of the party's demonstrations in the 1990s.

Mani believed that the masked men who had accosted him were associated with

Albania's Socialist Party. Mani also stated that, after he left Albania, he heard from his

cousin that the masked men had shot at Mani's house and killed his dog.

After hearing Mani's testimony, the IJ denied Petitioners' application for relief

and ordered their removal from the United States. The IJ concluded that, although Mani

had been the victim of extortion, Petitioners had failed to produce any evidence

connecting his mistreatment to his support of the Democratic Party or another ground

protected under the Immigration and Nationality Act. The IJ also concluded that

Petitioners had failed to show that they would likely be tortured if they were to return to

Albania. Petitioners appealed from the IJ's decision, but the BIA affirmed without an

opinion. Petitioners did not petition for review of that affirmance.

More than ten years later, in March 2013, Petitioners moved to reopen their

removal proceedings, claiming that they had new, material evidence and that country

conditions in Albania had changed. The motion, which relied largely on declarations

from Professor Julie Mertus from American University and Professor Brian Glyn

Williams from the University of Massachusetts at Dartmouth, revolved around Mani's

support of the Democratic Party, his status as a former business owner, and his fear that

his two United States citizen daughters (both of whom were born after Petitioners left

"Selhani." We will collectively refer to them as "Petitioners."

3

Albania) would be kidnapped and forced into prostitution if the family returned to Albania. The Government opposed the motion.

On June 20, 2013, the BIA denied reopening, stating that Petitioners "have not set forth materially changed country conditions or circumstances in Albania, or a prima facie persecution claim based on a protected ground." (J.A. at 4.) The BIA emphasized that Petitioners "have offered no evidence that shop keepers, or former shop keepers, are persecuted in Albania because they own or have owned shops, or that individuals who have returned to Albania after a long absence are targeted for persecution on account of a protected ground." (Id.) The BIA also stressed that the various articles submitted by Petitioners "do not show that the perpetrators [who kidnap and traffic Albanian girls] are affiliated with any political party, or that they employ kidnapping and trafficking to punish individuals for their political opinions or to punish them on account of any other basis for asylum and withholding of removal." (Id.) Additionally, the BIA noted that Petitioners' daughters were United States citizens and, therefore, were not required to go with Petitioners to Albania. Petitioners now seek review of the BIA's denial of reopening.[2]

_____

[2] At the end of its decision, the BIA stated that Petitioners' case did not warrant reopening under the BIA's sua sponte authority. "[W]e generally lack jurisdiction to review the BIA's decision not to reopen removal proceedings *sua sponte*," Pllumi v. Att'y Gen., 642 F.3d 155, 159 n.6 (3d Cir. 2011), and, in any event, Petitioners do not challenge that aspect of the BIA's decision. We also note that, to the extent that Petitioners' motion to reopen sought to pursue CAT relief, they have waived any challenge relating to that aspect of their case. See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in [his or her] opening brief, and for those purposes a passing

4

II.

We have jurisdiction over this petition pursuant to 8 U.S.C. § 1252(a)(1). "We review the BIA's denial of a motion to reopen for abuse of discretion and review its underlying factual findings related to the motion for substantial evidence." Shardar v. Att'y Gen., 503 F.3d 308, 311 (3d Cir. 2007) (quotation marks omitted). A denial of reopening constitutes an abuse of discretion only if it is "arbitrary, irrational, or contrary to law." Id. (quotation marks omitted). We review constitutional claims de novo. Yusupov v. Att'y Gen., 518 F.3d 185, 197 (3d Cir. 2008).

An alien generally must file a motion to reopen within 90 days of the entry of the final order of removal. See 8 U.S.C. § 1229a(c)(7)(C)(i). There is no such time limit, however, if the alien's motion "is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii). A change in country conditions is "material" only if it would change the outcome of the alien's application for relief. See Khan v. Att'y Gen., 691 F.3d 488, 496 (3d Cir. 2012). The BIA may deny a motion to reopen if it concludes that "(1) the alien has not established a prima facie case for the

reference to an issue will not suffice to bring that issue before this court.") (internal quotation marks omitted).

5

relief sought; (2) the alien has not introduced previously unavailable, material evidence; or (3) in the case of discretionary relief (such as asylum), the alien would not be entitled to relief even if the motion was granted." Huang v. Att'y Gen., 620 F.3d 372, 389 (3d Cir. 2010) (quotation marks omitted).

Having carefully considered the record,[3] and for the reasons provided by the BIA, we cannot conclude that the agency abused its discretion in denying Petitioners' motion to reopen. Although Petitioners claim that the BIA violated their due process rights by failing to consider all of their evidence, we see no such violation. The BIA's decision specifically discussed the declarations from the two professors and the collection of background evidence submitted by Petitioners, and we are convinced that the BIA gave due consideration to this evidence. We are also unpersuaded by Petitioners' claim that the BIA's decision conflicts with its prior rulings in three unpublished cases in which Petitioners' counsel participated. Even setting aside the fact that those rulings are not binding precedent, Petitioners have not established that the aliens in those cases were similarly situated to Petitioners.[4]

---

[3] To the extent that Petitioners attempt to rely on events that took place in Albania *after* the BIA denied reopening, they may not do so. Our review of the BIA's decision is confined to the administrative record. See 8 U.S.C. § 1252(b)(4)(A).

[4] In the first of the three cases highlighted by Petitioners, the BIA granted reopening based on its sua sponte authority (an issue that is not before us here), and did so in part based on the IJ's prior finding of past persecution (of course, no such finding was made in Petitioners' case). (See Pet'rs' Addendum at A1.) In the second case, the BIA again granted sua sponte reopening, and based that ruling on, inter alia, the IJ's prior finding of past persecution and the fact that the Government did not oppose reopening (as noted above, the Government *did* oppose reopening in Petitioners' case). (See id. at A2.) In the third case, which did not even identify the home country of the aliens involved, the

6

In light of the above, we will deny the petition for review. Petitioners' request for oral argument is denied.

BIA granted reopening based on "the particular circumstances present in this case" and the Government's non-opposition to reopening. (Id. at A3.)

7