NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1534
_____

MIRNA NAVED PENA RODAS,
a/k/a Mirna Naved Pena-Rodas,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A206-628-519
Immigration Judge: The Honorable Elise Manuel
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 4, 2019

Before: SMITH, *Chief Judge*, AMBRO and RESTREPO, *Circuit Judges*

(Filed: March 4, 2019)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

SMITH, *Chief Judge*.

Mirna Pena-Rodas petitions for review of a decision by the Board of Immigration Appeals (BIA) dismissing her appeal from the decision by the Immigration Judge (IJ) to deny her applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). For the reasons that follow, we will deny the petition for review.

I.

Pena-Rodas is a native and citizen of Honduras. During her hearing before the IJ, she was asked to describe the incident in Honduras that formed the basis of her claims for relief. She testified that, on a Friday evening in February 2014 while she was walking to church, she was approached by two men on motorbikes. She recognized one of them as a local gang member called "[P]antera," who had in the past made suggestive comments to her and had told others, "[o]ne day, she's going to be mine." JA 89. When the men got off their bikes and approached her, she realized that Pantera and his companion were going to attack her.

While his companion stood guard, Pantera grabbed Pena-Rodas and threw her to the ground. He grabbed her purse, including her cellphone, and tossed it to his companion. He then tried to forcibly remove her clothing, saying "finally you are going to be mine." JA 63. When she tried to scream for help, Pantera covered her mouth.

2

Pena-Rodas believed that Pantera would rape her. She escaped before he could do so by kneeing him in the groin and throwing sand in the other man's eyes. She fled to her church, and the priest walked her home. She never saw Pantera again, but, beginning after the attack, her mother and grandmother received repeated phone calls and voice mails from unknown numbers. Although no one ever spoke, Pena-Rodas suspected the calls were from Pantera because he had stolen her cellphone. The calls made Pena-Rodas feel threatened and afraid.

Traumatized after the attack, Pena-Rodas did not leave her house for a month. Although she suffered pain from being held down, she did not seek medical attention. She also did not report the incident to the police, believing that "the police [are] connected to the [gang]." JA 66. She discussed the attack with her priest instead. Seeking safety, she fled to the United States the following month. She entered this country illegally in March 2014, when she was twenty-one.

In her application for relief, Pena-Rodas attributed Pantera's attack to her political opinion, because she is opposed to gangs. She also attributed the attack to her membership in a particular social group (PSG) comprised of "women who have been actively targeted to be made into sex slaves for gang members, but have refused to join because they opposed gangs." AR 453 (Petitioner's brief in support of asylum application). Pena-Rodas also suspected that Pantera and his gang

3

targeted her because she was employed, attesting that "they think that I have money and wanted to rob me." AR 247 (declaration in support of asylum application). During the hearing, her counsel specified that the PSG includes women who have high school diplomas.

In resolving Pena-Rodas's claims, the IJ found Pena-Rodas to be a credible witness, accepting her account of her experiences and her description of her subjective fears and concerns. The IJ also believed that Pena-Rodas holds an anti-gang political opinion, but concluded that nothing in the record indicated that the attack against her was motivated by that political opinion. The IJ expressed hesitation about the cognizability of Pena-Rodas's proposed PSG but, assuming it to be cognizable, concluded that the evidence did not establish that she was targeted because of her membership in that group.

Accordingly, the IJ concluded that, although Pena-Rodas has an objectively reasonable fear of gang violence in Honduras, she did not establish past persecution or a well-founded fear of persecution on account of a protected ground and thus was not entitled to asylum or withholding of removal. The IJ further concluded that Pena-Rodas did not establish past treatment amounting to torture, or consent or acquiescence to torture, by a government official, and therefore denied CAT protection.

4

Pena-Rodas appealed to the BIA. The BIA agreed with and relied upon the IJ's finding that Pena-Rodas failed to establish a nexus between any harm she suffered or would suffer and a protected ground. Because the nexus determination was dispositive, the BIA declined to consider her other arguments that were not addressed to that issue. And, because Pena-Rodas did not present any arguments concerning her CAT claim, the BIA deemed that issue to be waived. The BIA therefore dismissed the appeal.

Pena-Rodas then timely filed a petition for review with this Court.

## II.

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a)(1). Although we review the BIA's decision, we also consider the IJ's opinion "where the BIA has substantially relied on that opinion." *Camara v. Att'y Gen.*, 580 F.3d 196, 201 (3d Cir. 2009). We review the agency's conclusions of law *de novo*, subject, where appropriate, to the principles of deference set forth in *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004). We review administrative findings of fact for substantial evidence, and must uphold the BIA's decision unless the evidence would compel a reasonable adjudicator to reach a contrary conclusion. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); 8 U.S.C. § 1252(b)(4)(B).

III.

Pena-Rodas claims she is eligible for asylum because she suffered past persecution and has a well-founded fear of persecution on account of both her political opinion and her membership in a PSG. 8 U.S.C. § 1101(a)(42)(A). To prevail, she must establish that one of these protected grounds "was or will be at least one central reason" for the persecution. 8 U.S.C. § 1158(b)(1)(B)(i).

A.

Pena-Rodas first contends that the BIA erred in finding that her anti-gang political opinion did not motivate Pantera's attack against her. In her brief, she reasons that, because Pena-Rodas was not a gang member and attended church, Pantera must have been aware of her anti-gang political opinion. Further, "the fact that [Pena-Rodas] and her family despised the gangs likely enraged [Pantera] and fueled his assault against her." Petitioner's Br. 9. Pena-Rodas takes issue with the agency's finding that Pantera's motivation was personal and not political, observing that "such a conclusion is ridiculous given that rape is not an acceptable or recognized form of courtship in any society on the planet." *Id.* at 10.

Without a doubt, Pena-Rodas correctly states that rape is not an acceptable form of courtship. Yet the agency did not determine that Pantera's violent attack was acceptable, appropriate, or lawful. Rather, it found that Pantera attacked Pena-Rodas for his own personal reasons. That Pantera was acting criminally does not,

6

without more, supply evidence that would compel a reasonable factfinder to conclude that the true motivation for the attack was political in nature. *See Gonzales-Posadas v. Att'y Gen.*, 781 F.3d 677, 687 (3d Cir. 2015) ("Conflicts of a personal nature and isolated criminal acts do not constitute persecution on account of a protected characteristic." (citations omitted)); *see also*, *e.g.*, *Marquez v. INS*, 105 F.3d 374, 380 (7th Cir. 1997) ("A personal dispute, no matter how nasty, cannot support an alien's claim for asylum."). Because Pena-Rodas does not identify evidence compelling a contrary conclusion, we will not disturb the agency's finding that Pantera attacked Pena-Rodas for personal reasons.

B.

Next, Pena-Rodas argues that the IJ improperly "redefined" her proposed PSG by describing it—consistently with her asylum application—as "women who have been actively targeted to be made sex slaves or gang members but refuse because they are opposed to gangs." *See* JA 28 and AR 453. She argues that she intended the PSG to be a narrower subset of that group, comprised of "young, educated, and working women (between the ages of 15–28), who are targeted by gangs for recruitment or sex trafficking." Petitioner's Br. 14.

This argument is unavailing. While a more narrowly defined PSG might assist in establishing the cognizability of her social group, the BIA assumed that Pena-Rodas is, indeed, a member of a cognizable social group. The BIA denied

7

her claim not on cognizability grounds, but for lack of nexus. Thus, even if we were to accept Pena-Rodas's more narrowly defined version of the PSG, there must nevertheless be evidence in the record to compel a conclusion that there is a nexus between her PSG membership and the attack against her.

Pena-Rodas fails to identify evidence of record to undermine the BIA's finding, supported by substantial evidence, that Pantera's motivation was personal, rather than on the basis of a protected ground. We will therefore deny Pena-Rodas's asylum claim.[1]

IV.

To prevail on her claim for withholding of removal under 8 U.S.C. § 1231(b)(3), Pena-Rodas must "establish a 'clear probability of persecution,' *i.e.*, that it is more likely than not, that [she] would suffer persecution upon returning home." *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 591 (3d Cir. 2011) (citing *INS v. Stevic*, 467 U.S. 407, 429–30 (1984)). "Since [that] standard is more demanding than that governing eligibility for asylum, an alien who fails to qualify for asylum is necessarily ineligible for withholding of removal." *Id.* Therefore,

---

[1] Pena-Rodas offers several other arguments directed to the IJ's determinations. For instance, she contends that the IJ erroneously concluded that the attack did not rise to the level of persecution. Yet the BIA rested its denial of relief on the absence of a nexus between the attack and any protected ground, and we agree with that finding. We therefore decline to consider arguments that are not addressed to the nexus issue.

because Pena-Rodas failed to establish eligibility for asylum, she also is unable to succeed on her withholding of removal claim.

V.

Finally, Pena-Rodas refers very briefly to her CAT claim, which the BIA deemed waived. She acknowledges that, when she was before the BIA, she did not "explicitly spell[] out that the attempted rape, and the prospect of future rape, would come under the umbrella of torture." Petitioner's Br. 10. Nonetheless, she now argues before this Court both that the rape attempt was torture and that the BIA "conceded the Honduran government's acquiescence of rape generally." *Id.* at 10–11.

Even if we are able to consider this apparently unexhausted claim, *see Lin v. Att'y Gen.*, 543 F.3d 114, 119–20 (3d Cir. 2008), Pena-Rodas fails to adequately develop it in this Court. She offers nothing more than three conclusory sentences in her brief. She does not attempt to explain why this Court should set aside the BIA's waiver determination, and she offers no legal citation or record support for her position that she should prevail on the merits of her CAT claim, including her view that the BIA "conceded the Honduran government's acquiescence of rape." Indeed, after reviewing the BIA's opinion, we discern no such concession. Because Pena-Rodas raised the CAT claim only in passing and failed to meaningfully develop any arguments in support of that claim, we consider the

9

issue waived.  *See Khan v. Att'y Gen.*, 691 F.3d 488, 495 n. 4 (3d Cir. 2012);

*Laborers' Int'l Union of N. Am., AFL–CIO v. Foster Wheeler Corp.*, 26 F.3d 375,

398 (3d Cir. 1994).

## VI.

For all of the foregoing reasons, we will deny the petition for review.