NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2088
_____

TARANJEET SINGH LAMBA,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,

Respondent

On Appeal from the Board of Immigration Appeals
(Agency No. 201-122-022)
Immigration Judge:  Hon. Amiena A. Khan

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 17, 2016

Before:  CHAGARES, RESTREPO, and VAN ANTWERPEN, Circuit Judges.

(Filed:  April 5, 2016)
_____

OPINION*
_____

CHAGARES, Circuit Judge.

Petitioner challenges a decision by the Board of Immigration Appeals ("BIA"),

dismissing an appeal of an Immigration Judge's ("IJ") denial of applications for asylum

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

pursuant to 8 U.S.C. § 1158(b)(1)(A), withholding of removal pursuant to 8 U.S.C. § 1231(b)(3)(A), and protection under the Convention Against Torture ("CAT"). For the following reasons, the petition for review will be denied.

I.

We write solely for the parties and therefore recite only the facts necessary to our disposition. Taranjeet Singh Lamba filed his initial application on January 11, 2011, seeking asylum or withholding of removal based on political opinion and the CAT. Administrative Record ("A.R.") 320, 324. In the January 2011 application, Lamba attached a written statement in English, explaining that his troubles began when he returned back to India from the United States in March 2009. A.R. 326. Lamba stated that his family had a domestic worker named Gopal employed at their home, who had run away. A.R. 326. According to Lamba, the police came looking for Gopal, inquiring about the worker because he had committed "some crime like robbery." A.R. 326. The police allegedly harassed Lamba, taking him to a police station, demanding a payment of 50,000 Indian rupees or else they would pin Gopal's crimes on Lamba and put Lamba in jail. A.R. 326. Lamba stated he had given the police bribes several times to "remain safe," and that he did not have good relations with a local politician, which is why the police "torture[d]" him. A.R. 326. Lamba ultimately concluded, "I have to run from my own country for the crime I have not done and from the police who . . . in fact just help themselves." A.R. 326.

Subsequently, on August 30, 2011 Lamba submitted an amended application, now also seeking relief based on religion, in addition to political opinion. A.R. 289. Lamba's

2

amended statement indicated that on March 15, 2009, police in India came to his home to ask about Gopal, and that "Gopal had some criminal records and he made a robbery." A.R. 295. Lamba explained that the police took him to a police station, beat him with a baton, slapped him, and again demanded 50,000 Indian rupees, which Lamba's father paid. A.R. 295. Lamba claimed that the police "did this because I was a Sikh and we are minority in India." A.R. 295. He added that they "said bad words about my religion" and that "I do not know why they hate my religion." A.R. 295. Lamba explained that he "received some injuries from the police beatings" and that his "thighs and legs were swollen." A.R. 295. Lamba stated that on two separate and subsequent occasions policemen came to his home, forcing him to pay 15,000 Indian rupees and 10,000 Indian rupees as bribes. A.R. 295. As recently as August 2011, police came to Lamba's home in India, ordering that he be produced to the police station. Lamba asserted that "[t]hey will kill me if I go back to India." A.R. 296.

On May 23, 2013, Lamba testified before the IJ through a Punjabi-language interpreter. A.R. 126-28. Lamba testified that he left India because of threats from the police. A.R. 137. He explained that police came to his home on March 15, 2009, looking for the domestic worker, Gopal. A.R. 137-39. He said he was taken to a police station, interrogated about Gopal, and then beaten with open hands and some sticks by five or six people. A.R. 138-39. Lamba testified that he was kept at the local precinct from 10 a.m. until 7 p.m. and that he was released after his father paid a bribe of 50,000 Indian rupees. A.R. 139-41. He testified that he suffered no visible injuries but that he had swelling all over and bruises, although he did not seek any medical treatment. A.R.

3

142. In subsequent months, the police came to his home two more times, requiring his family give the police additional bribes of 10,000 and 15,000 Indian rupees. A.R. 142-43. He testified that he could not go anywhere in India because the police are looking for him. A.R. 143. Finally, he explained that his family's religion was Sikhism. A.R. 144.

On cross-examination, Lamba answered questions about how his wife has visited him in the United States and returned to India without any problems. A.R 146-48, 158-160. He further explained that his father was not arrested during the March 2009 incident because his father was "elderly" and Lamba was the "spokesman" for the family. A.R. 150. When asked on cross-examination why his original application did not include information about being beaten with sticks and being slapped, as well as being targeted because of his Sikh religion, he explained that his lawyers were likely responsible for the omissions in his application. A.R. 152-53.

Finally, the IJ asked Lamba questions directly. In response to the IJ's questions, Lamba explained for the first time that he had been accused of Gopal's crime of robbery, and that he had never disclosed the criminal charge before because he "assume[d] that [his] connection with [Gopal] was automatic." A.R. 156-58. Lamba also explained that the police's interest in him was because he was Sikh and that the police may want to connect him with a "political group" or a "militant group" associated with Sikhs. A.R. 163-64.

In her June 26, 2013 opinion, the IJ determined that Lamba was not credible. A.R. 84-86. The IJ found inconsistencies in his testimony and statements regarding the police arresting him because he was Sikh, as well as insufficient detail regarding the role of his

4

religion in the arrest. A.R 84-86. The IJ also determined that the brief detention and beatings, "although deplorable," did not rise to the level of past persecution because he suffered no injuries that required medical treatment. A.R. 85-87. Paying of bribes, without more, was not sufficient to demonstrate past persecution. A.R. 87. The IJ also found that Lamba had not established a well-founded fear of persecution from the police in India. A.R. 86-88. The IJ explained that Lamba's testimony that the police sought to connect him with Sikh militants was not supported by the record. A.R. 88. For similar reasons, the Court found Lamba failed to prove his eligibility for withholding of removal, as well as for CAT. A.R. 89-92. In sum, the IJ denied Lamba's application and ordered him removed to India. A.R. 93

Lamba appealed to the BIA, which upheld the IJ's decision and dismissed the appeal. A.R. 3. The BIA held that there was no clear error in the IJ's finding on Lamba's credibility. A.R. 4. Similarly, the BIA held that even if credible, Lamba had not met his burden of proof for asylum. A.R. 4-5. Finally, the BIA upheld the IJ's denial of withholding of removal, as well as under the CAT. A.R. 5.

Lamba filed a timely petition for review of the BIA's decision.

## II.[1]

On appeal, Lamba argues that the BIA erred in affirming the IJ's findings that he was not credible, that he did not meet the burden of proof for asylum and withholding of removal, and that he did not meet his burden of proof for protection under CAT.

---

[1] The BIA had jurisdiction pursuant to 8 C.F.R. § 1003.1(b)(3). We have jurisdiction pursuant to 8 U.S.C. § 1252(a).

To be eligible for asylum, an applicant must demonstrate refugee status by showing "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see also 8 U.S.C. § 1158(b)(1). "In order to establish past or future persecution, an applicant must show past or potential harm rising to the level of persecution on account of a statutorily enumerated ground that is committed by the government or by forces the government is unable or unwilling to control." Kibinda v. Att'y Gen., 477 F.3d 113, 119 (3d Cir. 2007) (quotation marks omitted). An applicant who has established past persecution shall also be presumed to have a well-founded fear of persecution. 8 C.F.R. § 1208.13(b)(1).

When the BIA's decision "substantially relies" upon a decision of an Immigration Judge, we have jurisdiction to consider both. Kaita v. Att'y Gen., 522 F.3d 288, 295-96 (3d Cir. 2008). We review factual findings, such as findings of persecution, for substantial evidence. Li Hua Yuan v. Att'y Gen., 642 F.3d 420, 425 (3d Cir. 2011). We also review adverse credibility determinations under a substantial evidence standard. Kaita, 522 F.3d at 296. Under such a standard, an adverse credibility determination "must be upheld on review unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. (quotation marks omitted); see also 8 U.S.C. § 1252(b)(4)(B). "Under this deferential standard, the IJ's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." Kibinda, 477 F.3d at 119 (quotation marks omitted). Because Lamba filed his asylum application after May 11, 2005, the effective date of the REAL ID Act, a credibility determination can be made

6

without regard to whether the inconsistency or falsehood goes to "the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). Such a credibility determination is based on the "totality of the circumstances" of the applicant's demeanor, candor, and statements, among other relevant factors. See id.

Substantial evidence supports a determination that Lamba was not credible. Considering the totality of the circumstances, numerous facts support a finding of adverse credibility. Throughout, Lamba has been inconsistent and vague about how being Sikh resulted in his arrest and harassment by the police. Lamba initially appeared to testify that he was arrested because the police sought the domestic worker Gopal in connection with a possible robbery. Later, he testified that the police sought to accuse him of the underlying robbery. Then, he testified superficially that being Sikh also played a role in his arrest. These three positions are inconsistent and call his credibility into question. His written statements were also shifting about the role of his Sikh faith. In his original application, Lamba did not claim that he was arrested and extorted because he was Sikh. Later, however, he asserted in his amended application that he was targeted for being Sikh. Even then, his assertions about how being Sikh lead to persecution were vague and inconsistent. He claimed in the amended application that the police said bad things about his religion. He wrote that he was unsure why they hated his religion. But when testifying, Lamba speculated in a perfunctory manner that the police would want to connect him with a Sikh "political" or "militant group." Again, he merely offered that as one possibility for being targeted by the police, in addition to the accusations that he was involved in Gopal's possible robbery. The fact that his Sikh father and family were not

7

targeted because of their religion, while he was, also raises credibility concerns. The IJ

raised other inconsistencies between his affidavits of support, written applications, and

testimony. Substantial evidence supports a finding that Lamba was not credible, and

therefore, we are compelled to uphold the BIA.

Substantial evidence also supports the BIA and IJ's determination that even if

credible, Lamba did not meet his burden of proof for asylum. Asylum may not be

granted if the protected ground is only an "incidental" or "tangential" reason for

persecution of an applicant. Ndayshimiye v. Att'y Gen., 557 F.3d 124, 130 (3d Cir.

2009). Lamba's initial application did not claim he was targeted because of his religion.

His testimony indicated that he was targeted because of his connection to Gopal and

involvement in the possible robbery. When he did testify about how being Sikh factored

into his arrest, he was vague and inconsistent about why the police would target him for

his religion. The BIA's determination that he did not establish that he was arrested and

beaten because he was Sikh cannot be disturbed. In short, Lamba has not demonstrated a

nexus between being Sikh and his alleged persecution.

The BIA found that Lamba's alleged beatings[2] by the police and bribes paid do not

constitute past persecution for purposes of asylum because while the claimed beatings

were repugnant, they do not rise to the level of persecution. We need not resolve this

issue. See, e.g., Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) ("While this Court

---

[2] There are inconsistencies in Lamba's statements about the beatings he suffered. His original application did not indicate that he was beaten by the police. He first mentioned this in his amended application. He later testified that he suffered no visible injuries, despite swelling and bruises, and that he did not seek any medical treatment. A.R. 142.

8

has not yet drawn a precise line concerning where a simple beating ends and persecution begins, our cases suggest that isolated incidents that do not result in serious injury do not rise to the level of persecution."). As already mentioned, Lamba has not demonstrated his burden of proof connecting his alleged persecution with being Sikh. Nor can the adverse credibility determination be disturbed. Therefore, he has not demonstrated past persecution. For similar reasons, Lamba has not independently established a well-founded fear of future persecution. See Khan v. Att'y Gen., 691 F.3d 488, 496 (3d Cir. 2012) ("To establish a well-founded fear of persecution, the alien must show both a subjective fear and that a reasonable person in his position would fear persecution, either because he would be individually singled out for persecution or because there is a pattern or practice in his home country of persecution against a group of which he is a member." (quotation marks omitted). The fact that his family remains behind without persecution also undermines a finding that he has a well-founded fear of future persecution. See, e.g., Sioe Tjen Wong v. Att'y Gen., 539 F.3d 225, 236 (3d Cir. 2008) ("Furthermore, Wong's siblings and mother still live in Indonesia and practice Catholicism, undermining her claim to a well-founded fear of persecution in Indonesia."), abrogated on other grounds by, Nbaye v. Att'y Gen., 665 F.3d 57 (3d Cir. 2011). Therefore, he has not met his burden of proof for asylum.[3]

---

[3] For substantially the same reasons, his claim for withholding of removal also fails. "[I]f an alien fails to establish the well-founded fear of persecution required for a grant of asylum, he or she will, by definition, have failed to establish the clear probability of persecution required for withholding of deportation." Zubeda v. Ashcroft, 333 F.3d 463, 469-70 (3d Cir. 2003).

9

Finally, Lamba's claim that the BIA and IJ erred with respect to his CAT claim[4] must also fail. Under the CAT, an applicant has the burden of proof "to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).[5] "[A] decision-maker must review claims for relief under the Convention and consider relevant country conditions even where adverse credibility determinations have precluded relief under the INA." Tarrawally v. Ashcroft, 338 F.3d 180, 188 (3d Cir. 2003). Lamba's briefing on this point is limited. He claims, without more, that the physical and mental abuse he suffered is torture and that the police threatened his family that he will be harmed if he returns. He also offers evidence of the use of torture by Indian police. But this, without more, does not demonstrate that he is "more likely than not" to be tortured upon return. Both the IJ and BIA found that he has not been tortured in the past, and that his family remains unharmed in India. As the IJ

---

[4] "Although the standard for establishing a CAT claim is more stringent than the asylum standard, it does not follow that a failure to meet the asylum standard necessarily precludes a CAT claim." Kibinda, 477 F.3d at 123. We have previously explained that claims for CAT relief are "analytically distinct" from claims for asylum and withholding of removal. Ghebrehiwot v. Att'y Gen., 467 F.3d 344, 358 (3d Cir. 2006) (explaining that "denial of a claim for withholding of removal or asylum does not control the analysis of a claim for relief under the Convention Against Torture. A claim under the Convention is not merely a subset of claims for either asylum or withholding of removal." (quotation marks omitted) (citation omitted)).

[5] "For an act to constitute torture under the Convention and the implementing regulations, it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." Auguste v. Ridge, 395 F.3d 123, 151 (3d Cir. 2005).

10

pointed out, Lamba never testified that the police would "kill or torture him," only that he would be "arrested and possibly connected to a militant group." A.R. 168.[6] The BIA and IJ found that Lamba has not demonstrated that the government in India is interested in him or arresting him upon return. Substantial evidence supports the BIA's denial of relief under CAT.

## III.

For the foregoing reasons, we will deny the petition for review.

---

[6] In his written amended application, however, he did state in general terms that the police would kill him if he returned.