**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3990
_____

FREDY MARIONY ALVARADO-CALDERON,
a/k/a Eduardi Calderon, a/k/a Estuardo Calderon,
a/k/a Ignacio Velasquez, a/k/a Estuardo Soto-Lopez,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A078-171-945)
Immigration Judge:  Honorable Audra Behne
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 10, 2020
Before:  AMBRO, GREENAWAY, JR. and PORTER, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 12, 2020)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Fredy Mariony Alvarado-Calderon (Calderon), proceeding pro se, petitions for review of an order of the Board of Immigration Appeals (BIA) dismissing his appeal from the Immigration Judge's (IJ) order denying his application for withholding of removal and protection under the Convention Against Torture (CAT). For the reasons that follow, we will dismiss the petition in part and deny it in part.

As the parties are well-aware of the facts, we will only describe them here briefly. Alvarado-Calderon, a native and citizen of Guatemala, entered the United States illegally in 1996. After his conviction in New Jersey for shoplifting in 2000, he returned to Guatemala; but he was apprehended a year later as he attempted to re-enter the United States. In 2001, he was charged with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present without admission. An IJ ordered him removed in absentia.[1] Between 2002 and 2006, he was convicted in New Jersey and Pennsylvania of numerous offenses ranging from shoplifting to simple assault. He was removed pursuant to the prior removal order in 2007.

Alvarado-Calderon re-entered the United States again in 2008; that same year, he was convicted of battery in Illinois. He returned to Guatemala in 2009, where he was convicted of serious bodily injury in 2011, and, a year later, he was arrested for extortion. In January 2017, he admittedly shot his cousin Manuel in the back and Manuel's son,

---

[1] The Government maintains that Alvarado-Calderon was removed pursuant to that order in October 2001, and that he re-entered the United States sometime thereafter; however, the record is unclear on this point.

2

Carlos Manuel, in the chest. Carlos Manuel died five days later. Two months later, he left Guatemala and entered the United States illegally for the final time. There is an outstanding warrant in Guatemala for Alvarado-Calderon's arrest for murder and attempted murder.

Alvarado-Calderon was detained by U.S. immigration authorities in July 2017, and his prior order of removal was reinstated. He was convicted in the United States District Court for the District of Maryland in March 2018 of illegal re-entry in violation of 8 U.S.C. § 1326, for which he was sentenced to two years' imprisonment. In 2019, upon release into custody with the Immigration and Customs Enforcement (ICE) Agency, he expressed a fear of harm if he was returned to Guatemala, and his case was referred to an IJ for withholding-only removal proceedings. See 8 C.F.R. § 1208.31(c), (e). Alvarado-Calderon filed an application for withholding of removal under the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(b)(3), and withholding or deferral of removal under the Convention Against Torture ("CAT"), 8 C.F.R. § 1208.17(a).

At a hearing before the IJ, Alvarado-Calderon testified that he will be subject to torture by his uncle or his cousin Manuel if he is returned to Guatemala. He maintained that his uncle wants to harm him because of a long-running family dispute, and Manuel wants to harm him for killing his son Carlos. He testified that his relatives have used their Government connections to have false criminal charges brought against

3

him, including the outstanding murder and attempted murder charges.[2] He claims that if he is returned to Guatemala to face those charges, his cousin or uncle will pay or use their influence with the police to gain access to Alvarado-Calderon so they can harm him.

The IJ determined that Alvarado-Calderon's convictions for assault and battery were "particularly serious crimes," and, therefore, he was statutorily ineligible for withholding of removal under the INA and under the CAT. Alternatively, the IJ determined that the harm Alvarado-Calderon feared was not on account of a protected ground, but rather the result of a family dispute, and, therefore, did not provide a basis for withholding of removal under the INA. The IJ also found that Alvarado-Calderon had not established that he would suffer torture by or with the consent or acquiescence of Guatemalan officials, as required for withholding or protection under the CAT.

On appeal to the BIA, Alvarado-Calderon did not dispute that his convictions were for particularly serious crimes, and, therefore, the Board deemed any challenge to that determination as waived. The Board quickly dispensed with a challenge that the interpreter was biased and misinterpreted Alvarado-Calderon's testimony, finding no factual basis to support it. The BIA otherwise adopted and affirmed the IJ's decision and dismissed the appeal. Alvarado-Calderon filed this timely petition for review.

---

[2] According to Alvarado-Calderon's testimony, Carlos was killed by a poisonous bullet shot from Manuel's gun, and not by the bullet from his gun which struck Carlos in the chest.

We have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. § 1252. When, as here, the BIA affirmed and partially reiterated the IJ's discussions and determinations, we review both decisions. See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). We review the agency's findings under the substantial-evidence standard pursuant to which "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Nasrallah v Barr, 140 S. Ct. 1683, 1692 (2020).

As noted by the BIA, Alvarado-Calderon did not contest the IJ's determination that he was convicted of a "particularly serious crime" and that he was, therefore, ineligible for withholding of removal under either the INA or the CAT; he was potentially eligible only for deferral of removal under the CAT. See 8 U.S.C. §§ 1158(b)(2)(A)(ii), (B)(i); 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 1208.16(d). To the extent that his informal brief can be construed to challenge his withholding claim under the CAT,[3] we will dismiss the petition for lack of jurisdiction. See 8 U.S.C. § 1252(d)(1); Castro v. Att'y Gen., 671 F.3d 356, 365 (3d Cir. 2012) (noting that this Court generally lacks jurisdiction to consider any issues not raised before the Board).

To establish his claim for deferral of removal under the CAT, Alvarado-Calderon had to show that he is "more likely than not" to be tortured "by or at the instigation of or

---

[3] Alvarado-Calderon does not challenge his withholding claim under the INA, and he challenges the denial of "CAT" relief only generally.

5

with the consent or acquiescence of" a Guatemalan public official. 8 C.F.R. § 1208.16(c)(2); § 1208.18(a)(1); Sevoian v. Ashcroft, 290 F.3d 166, 174-75 (3d Cir. 2002). Alvarado-Calderon was required to establish his entitlement to relief by objective, not subjective, evidence. Kamara v. Att'y Gen., 420 F.3d 202, 213 (3d Cir. 2005). Substantial evidence supports the denial of CAT relief.

The IJ determined that Alvarado-Calderon failed to establish that the Guatemalan Government would breach its legal responsibility to prevent his torture. See Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 69, 70 (3d Cir. 2007). As the IJ noted, the 2017 Human Rights Report (HR Report) indicated that there was police corruption in Guatemala, but that the Government had taken measures to combat it, including through its Office of Professional Responsibility (ORP), which conducts internal investigations of security abuses by officers. A.R. at 55-56, 60. The ORP reported that complaints against police for extortion and abuse of authority were down significantly.[4] A.R. at 60. The

---

[4] Contrary to Alvarado-Calderon's contention, the IJ considered that he filed a complaint with the ORP alleging that officers had beaten him while he was detained on the extortion charges. He testified that he was told that the officers would be fired, but he believes they were only transferred because he saw them in a different location. (See HR Report at 6, A.R. at 55, noting that the police "routinely transferred officers suspected of wrongdoing rather than investigating them."). He admitted, however, that he did not know whether the officers were disciplined. Cf. Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 351 (3d Cir. 2008) (explaining that where police repeatedly ignore reports filed by the alien concerning violence and threats, this could constitute willful blindness). The IJ concluded that, assuming that the allegations against the officers were true, the record evidence indicates that they were rogue officers whose actions were the workings of criminal elements within Guatemala and not the Guatemalan government.

6

articles that Alvarado-Calderon submitted were also found to demonstrate, like the

Report, that the Guatemalan police investigate crimes and arrest suspects in criminal

cases. IJ Op. at 10. Alvarado-Calderon speculated that his relatives had paid police to

arrest and detain him in the past, but he failed to provide any support for this claim, and

the record undermines it.[5] For example, despite his claim that his cousin Manuel pays to

influence the police, Alvarado-Calderon admitted that both he and Manuel's son Carlos

were arrested after an altercation, and that Carlos was required to pay him for damages to

his property. See A.R. at 155-156. Moreover, as the IJ found, Alvarado-Calderon's

criminal history and the articles he submitted indicate that his prior arrests and criminal

charges appear legitimate. Id. at 10-11. In particular, Alvarado-Calderon's testimony

that he shot Carlos Manuel in the chest and left Guatemala two months later, coupled

with his admission that he may have caused Carlos's death, led the IJ to conclude that the

outstanding murder charges were not the product of corrupt activities by Guatemalan

officials. The BIA agreed with the IJ that there was insufficient evidence that Alvarado-

---

[5] Alvarado-Calderon also maintained that he was raped and beaten by inmates while in prison on the extortion charges. He asserts that he contracted HIV as a result of the sexual assault. He testified that the assault was orchestrated by Oto Francisco, an employee of his uncle, who was facing attempted murder charges. Alvarado-Calderon was scheduled to testify against Francisco, and the attack was allegedly done to intimidate him and keep him from testifying. The IJ noted that this assault was committed by private, not government actors, and there is nothing in the record indicating that Alvarado-Calderon reported the assault to the authorities; indeed, when he was released, he filed the complaint with ORP against the officers but he did not mention the sexual assault.

7

Calderon would likely be tortured as a result of the impending possible arrest in Guatemala. The record does not compel a different conclusion.

Finally, Alvarado-Calderon alleges generally that the BIA was biased against him. See Wang v. Att'y Gen., 423 F.3d 260, 269 (3d Cir. 2005) ("[N]o person [may] be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him."). There is no basis to support a claim of bias. See Liteky v. United States, 510 U.S. 540, 555 (1994).[6]

Based on the foregoing, we will dismiss the petition for review to the extent we lack jurisdiction, and will deny the petition for review in all other respects.

---

[6] Alvarado-Calderon did not raise any issue in his brief with respect to his allegation of misinterpretation or bias on the part of the interpreter. See Khan v. Att'y Gen., 691 F.3d 488, 495 n.4 (3d Cir. 2012) (an "issue is waived unless a party raises it in its opening brief"); see also Fed. R. App. P. 28(a)(8). In any event, we agree with the BIA that the record does not support such a claim.