**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1249
_____

REINALDO CORTEZ-AMADOR,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a
Decision of the Board of Immigrations Appeals
(Agency No. A209-898-885)
Immigration Judge: Jason L. Pope
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 08, 2022

Before:  SHWARTZ, MATEY, and FUENTES, *Circuit Judges*

(Filed: April 25, 2023)

Pedro J. Familia
Laura S. Rodriguez
American Friends Service Committee
Immigrant Rights Program
570 Broad Street
Suite 1001
Newark, NJ 07102
        *Counsel for Petitioner*


Lisa Morinelli
Tim Ramnitz
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

Reinaldo Cortez-Amador petitions this Court for review of a final order of removal of the Board of Immigration Appeals (BIA), dismissing the appeal of an Immigration Judge's (IJ) decision denying Petitioner's motion to terminate removal proceedings and his applications for adjustment of status, asylum and withholding of removal, and protection under the Convention Against Torture (CAT). Because we lack jurisdiction to review factual findings on an adjustment

application and the agency decisions do not reflect any error of law or are otherwise supported by substantial evidence, we will dismiss the petition in part and deny it in part.

## FACTS AND PROCEDURAL HISTORY

Petitioner fled from Guatemala to the United States at the age of 16 following his father's murder by gang members. He entered the United States in 2016 without inspection and was placed by Immigration Authorities in his sister's custody in Trenton, New Jersey. In January 2020, United States Citizenship and Immigration Services ("USCIS") granted him Special Immigrant Juvenile Status ("SIJS"), a classification available to immigrants who are under 21 and were abandoned by their parents.[1]

---

[1] As relevant here, the Immigration and Nationality Act ("INA") states that the following qualify as special immigrants:

> (J) an immigrant who is present in the United States--
>
> > (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect,

3

Noncitizen children may receive SIJS only after satisfying a set of rigorous, congressionally defined eligibility criteria, including that a juvenile court has found it would not be in the child's best interest to return to their country of last habitual residence and that the child is dependent on the court or placed in the custody of the state or someone appointed by the state.[2] The child must also receive approval from USCIS and the consent of the Secretary of Homeland Security to obtain the status.[3] A recipient of SIJS may pursue legal permanent residency.

While Petitioner was awaiting his SIJS classification, in August 2019, New Jersey charged Petitioner with sexual assault on a child under the age of 13 and child endangerment. Pursuant to a plea bargain, Petitioner pleaded guilty to non-sexual child endangerment and admitted giving the alleged victim a cigarette. He was sentenced to 364 days of incarceration and 3 years of probation.

---

abandonment, or a similar basis found under State law.

8 U.S.C. § 1101(a)(27).

[2] 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c).

[3] 8 U.S.C. § 1101(a)(27)(J); Memorandum from Donald Neufeld, Acting Assoc. Dir., Domestic Operations & Pearl Chang, Acting Chief, Office of Policy & Strategy, USCIS, *Trafficking Victims Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions* 3 (Mar. 24, 2009),https://www.uscis.gov/sites/default/files/USCIS/Laws/ Memoranda/Static_Files_Memoranda/2009/TVPRA_SIJ.pdf [hereinafter USCIS Memorandum] (citing H.R. Rep. No. 105-405, at 130 (1997) (Conf. Rep.)).

In March 2021, the Department of Homeland Security issued a Notice to Appear alleging that Petitioner was removable for being present in the United States without admission or parole. Petitioner made three arguments in the ensuing proceedings: (1) his SIJS exempts him from removal; (2) he should be granted an adjustment of status; and (3) he is entitled to asylum (8 U.S.C. § 1158), withholding of removal (8 U.S.C. § 1231(b)(3)), and/or CAT protection because the same group that killed his father would target him if he returned to Guatemala.

After a hearing, the IJ (1) held that SIJS is not an exemption from removal as an inadmissible noncitizen, (2) exercised his discretion to deny adjustment of status after balancing the equities, (3) denied asylum and withholding of removal, and (4) denied CAT protection. The BIA affirmed on the same grounds. First, the BIA agreed with the IJ that SIJS parole applies for adjustment of status only, not removal, pursuant to the plain language of 8 C.F.R. § 1245.1(a). In other words, an approved SIJS petition does not categorically protect the noncitizen recipient from removal. Second, the BIA determined that the IJ properly exercised its discretion in denying Petitioner's application for adjustment of status because he did not clearly err in considering the entire record and determining that negative factors, namely, Petitioner's criminal history, outweighed evidence of Petitioner's high school graduation and church involvement. Third, the BIA determined that the IJ properly denied asylum and withholding of removal because the harm did not rise to the level of past persecution, and Petitioner had no objectively reasonable fear of future harm. Last, the BIA affirmed the denial of CAT relief because the IJ correctly determined that Petitioner is not more likely than not to be tortured if removed and did not

5

demonstrate that the government would acquiesce to such treatment. Petitioner petitions for review.[4]

## DISCUSSION

The threshold determination in this case is whether a SIJS recipient is subject to removal simply for presence in the United States "without being admitted or paroled."[5] As explained here, Petitioner is removable and he has not established an entitlement to asylum or withholding of removal.

### (1) *Whether SIJS recipients are paroled for purposes of removal.*

The parties agree that Petitioner is a "special immigrant," as defined by 8 U.S.C. § 1101. Petitioner argues that special immigrants such as himself are exempt from removal under 8 U.S.C. § 1182(a)(6)(A)(i), which provides that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

---

[4] Petitioner does not appeal the denial of CAT relief and therefore has abandoned that claim. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993) (absent extraordinary circumstances, failure to develop arguments in an opening brief results in their waiver).

[5] 8 U.S.C. § 1182(a)(6)(A)(i).

Special immigrants receive certain accommodations outlined in 8 U.S.C. § 1255, which governs applications for adjustments of status:

> (a)    The status of an alien who was . . . paroled into the United States [may be adjusted to legal permanent resident] . . . if [certain requirements are met, including that] the alien is . . . admissible to the United States for permanent residence[.]
>
> . . .
>
> (h)    In applying this section to a special immigrant . . .
>
>> (1)  such an immigrant shall be deemed, for purposes of subsection
>>
>> (a), to have been paroled into the United States; and
>>
>> (2)    in determining the alien's admissibility as an immigrant—
>>
>>> (A)  paragraph[] . . . (6)(A) . . . of section 1182(a) of this title shall not apply[.][6]

---

[6] *See* 8 C.F.R. § 1245.1(a) ("A special immigrant described under [8 U.S.C. § 1101(a)(27)(J)] shall be deemed, for the purpose of applying the adjustment to status provisions of section 245(a) of the Act, to have been paroled into the United States, regardless of the actual method of entry into the United States.").

The plain language of 8 U.S.C. § 1255(h)(2) clearly states that 8 U.S.C. § 1182(a)(6)(A)(i)—which permits the removal of immigrants present without admission or parole—does not apply to a special immigrant. But the Government argues that the preface to § 1255(h) limits the scope of subsection (h)(2) to adjudicators "applying this section," i.e., *to applications for status adjustment*. Under this interpretation, § 1255(h) simply allows SIJS recipients to adjust their status despite their illegal entry. The parties dispute whether 8 U.S.C. § 1255(h)(2) applies to determine admissibility for purposes of *removal*. This Court reviews questions of law, including the BIA's interpretation of the INA, *de novo*, subject to *Chevron* deference.[7]

Section 1255(h) expressly states that a noncitizen with SIJS shall be deemed to have been *paroled for purposes of subsection (a)* of that section, i.e., for adjustment of status to a legal permanent resident only. Under normal canons of statutory construction, "courts should construe statutory language to avoid interpretations that would render any phrase superfluous."[8] The plain language of this subsection applies

---

[7] Because the text of 8 U.S.C. § 1255(h) is unambiguous, we need not defer to BIA's interpretation under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Mondragon-Gonzalez v. Att'y Gen.*, 884 F.3d 155, 158 (3d Cir. 2018).

[8] *U.S. v. Cooper*, 396 F.3d 308, 312 (3d Cir. 2005) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant," *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted)).

the "deemed to have been paroled" language *only* to subsection (a) and no other provision of the INA. If we were to read the statute as Petitioner suggests, "for purposes of subsection (a)" would be rendered superfluous.[9] Conversely, if in § 1255(h) Congress had intended a noncitizen with SIJS to be deemed paroled for purposes of removal, it would have included reference to removability or 8 U.S.C. § 1182.[10] Accordingly, the plain language demonstrates that Petitioner is removable despite his SIJS,[11] and the IJ and BIA properly considered Petitioner's arguments regarding adjustment of status, withholding of removal, and CAT relief.[12]

---

[9] *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (refusing to adopt statutory construction that would render statutory language "insignificant.").

[10] *See Aristy-Rosa v. Att'y Gen.*, 994 F.3d 112, 115 (3d Cir. 2021) ("[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another[.]" (internal quotation marks and citation omitted)).

[11] This plain-text interpretation does not produce absurd results. *Aristy-Rosa*, 994 F.3d at 116. Congress intended to "enlarge[] the chance that [SIJS recipients] would be successful in their applications for adjustment by exempting them from a host of grounds that would otherwise render them inadmissible." *Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 171 (3d Cir. 2018). Thus, Congress could have rationally decided that SIJS recipients should be given the opportunity to apply for adjustment of status, while also contemplating that they may be removed if their application is denied or for another appropriate basis.

[12] *Osario-Martinez* is distinguishable because the Court did not hold SIJS recipients are exempt from removal due to

9

### (2) *Whether the BIA erred in denying the adjustment of status application.*

Petitioner next argues that remand is required for the BIA to conduct a "distinct discretionary analysis specifically tailored for adjustment of status."[13]  In opposition, the Government argues that this Court lacks jurisdiction to consider the agency's discretionary denial of adjustment of status.  We lack jurisdiction to review factual findings on an adjustment application.[14] Thus, the narrow question within our jurisdiction is whether the agency made an error of law or Petitioner makes a constitutional claim.[15]

Petitioner's argument distills to a contention that the BIA failed to weigh some of his arguments and evidence in making its determination.  This Court has "consistently held" that "arguments such as that an [IJ] or the BIA incorrectly weighed evidence, failed to consider evidence or improperly weighed equitable factors *are not questions of law under [8 U.S.C.] § 1252(a)(2)(D)*."[16]  Thus, Petitioner's claims do not assert legal error or constitutional violations, and this Court does not have jurisdiction to address them.

---

inadmissibility, but only that Congress intended to provide SIJS recipients with an opportunity to pursue adjustment of status.

[13] Opening Br. at 30.

[14] *Patel v. Garland*, 142 S. Ct. 1614, 1621-23, 1627 (2022).

[15] *Id.*; *Zheng v. Gonzales*, 422 F.3d 98, 111 (3d Cir. 2005); *see* 8 U.S.C. § 1252(a)(2)(D).

[16] *Chiao Fang Ku v. Att'y Gen.*, 912 F.3d 133, 144 (3d Cir. 2019) (emphasis added).

*(3) **<u>Whether the undisputed facts demonstrate past persecution/likelihood of future harm for asylum or withholding of removal.</u>***

Petitioner argues that the BIA applied the wrong standard of review to the IJ's findings, failed to consider the threats and harm to Petitioner in the aggregate, and improperly concluded that Petitioner could not establish a nexus between persecution and his social group. The Government argues that substantial evidence supports the BIA's findings that Petitioner failed to establish past persecution or a well-founded fear that anyone in Guatemala would target him for harm. We agree with the Government that substantial evidence supports the BIA's findings.[17]

To make out a prima facie case for asylum, a petitioner must show that he was persecuted, or had a well-founded fear of persecution, "on account" of a statutorily protected ground, including "race, religion, nationality, membership in a particular social group, or political opinion."[18] Withholding of removal requires a higher risk of persecution—a clear

---

[17] We review the BIA's legal conclusions *de novo* while we review its factual findings for substantial evidence. *Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 177 (3d Cir. 2020); *see I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481–82 (1992) (analyzing the causal connection between political opinion and persecution as a factual question). The substantial evidence standard requires us to defer to the factual findings of the BIA as long as they are supported by evidence reasonably grounded in the record. *Guzman Orellana*, 956 F.3d at 177.
[18] 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13.

11

probability.[19]  If a petitioner cannot meet his burden to establish a risk of persecution for asylum, they automatically fail on their withholding claim.

Persecution "connotes extreme behavior, including threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom."[20] Substantial evidence supports the agency's finding that the relevant actions did not rise to the level of the extreme conduct that constitutes persecution.[21]  Petitioner testified that two men, Jehu and Neri, threatened to kill him while he was working with his cousin.  His cousin was later killed by these two men.  Petitioner was not threatened again in the five months prior to his departure to the United States.  Although threats in combination with physical harm to a petitioner's close associates can rise to the level of persecution,[22] Petitioner did not connect the relevant threats to the harm that was caused to his cousin, and he was not threatened thereafter.  While the same men killed Petitioner's father, that occurred seven years prior to Petitioner's departure, and Petitioner had remained

---

[19] *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 348-49 (3d Cir. 2008).
[20] *Ahmed v. Ashcroft*, 341 F.3d 214, 217 (3d Cir. 2003) (internal quotation marks and citation omitted).
[21] *See Chavarria v. Gonzalez,* 446 F.3d 508, 518 (3d Cir. 2006) (explaining that threats constitute persecution only in "a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm . . . [or] are highly imminent and menacing in nature" (internal quotation marks and citation omitted)).
[22] *Herrera-Reyes v. Att'y Gen.*, 952 F.3d 101, 111 (3d Cir. 2020).

unharmed during the intervening years. Moreover, Petitioner's siblings remained in Guatemala unharmed after the deaths of both their father and cousin.[23] Thus, Petitioner raises no meritorious argument with respect to asylum or withholding of removal.

## CONCLUSION

For the foregoing reasons, we will dismiss the petition in part and deny it in part.

---

[23] *Gomez-Zuluaga*, 527 F.3d at 347 (finding a well-founded fear of harm established where threats continue post-departure); *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005).