**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-1104

_____

JOSE MANUEL RAMOS-CRUZ; BIANA AMERICA GIRON-BARRERA DE
RAMOS; A. C. R.-G.; K. R. R.-G.,

Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A220-971-171; A220-971-172; A220-971-173 and A220-971-174)
Immigration Judge: Honorable Jason L. Pope

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 27, 2024

Before:  KRAUSE, BIBAS and AMBRO, Circuit Judges

(Opinion filed: October 1, 2024)

## OPINION*

AMBRO, Circuit Judge

Jose Manuel Ramos-Cruz and his wife, Bianca America Giron-Barrera de Ramos, along with their two minor children, seek review of an order of the Board of Immigration Appeals ("BIA") that dismissed their appeal of the decision by an Immigration Judge ("IJ") denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). As Ramos-Cruz does not contest the denial of CAT protection, and his other challenges fail, we deny the petition.

I

Ramos-Cruz is a native and citizen of Guatemala who entered the United States with his wife and two daughters in June 2021 after "being extorted and threatened with death" by unknown individuals whom he believed "were affiliated with organized crime."[1] Administrative Record ("A.R") 46-47. Five incidents prompted Ramos-Cruz and his family to flee. In January that year, he received a phone call demanding that he pay $400 or else his daughters would be killed. The next month, four armed and masked individuals

---

*This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] For simplicity, we refer only to Jose Manuel Ramos-Cruz, as he is the lead petitioner. His wife (who had previously entered the country in February 2021 but stayed only briefly) and their children sought asylum as derivative beneficiaries. They also filed independent applications for asylum, withholding of removal, and CAT protection, but the bases for those claims are the same as Ramos-Cruz's.

came to his house, this time doubling their demands. Because Ramos-Cruz didn't have the means to pay, they asked that he instead join their group (which he did not do). He received two additional threats (at least one in March), and once again the individuals warned that he or his children would be killed. In May, "a man" attempted to kidnap Ramos-Cruz's younger daughter while the two were going to the store. A.R. 47. Though unsuccessful in abducting the child, the individual threatened that Ramos-Cruz was "already … a dead man." *Id.* The latter immediately went to the police to report the attempted kidnapping and prior threats of extortion but received an "[un]satisfactory response." A.R. 48. Fearing for his life and that of his family, he left for the United States the next day.

The Department of Homeland Security began removal proceedings in September 2021. Ramos-Cruz conceded removability but requested the relief already noted. As part of his asylum and withholding-of-removal claims, he argued that the threats of extortion and attempted kidnapping amounted to past persecution and gave rise to a well-founded fear of future persecution based on his membership in two particular social groups ("PSGs"): "family unit" and "individuals who publicly provide assistance to law enforcement against criminals." A.R. 56, 111-12.

The IJ denied the asylum application, concluding that the listed incidents did not rise to the level of persecution, and, even if they did, those threats were not sufficiently tied to the alleged PSGs. Addressing the family-unit PSG first, the IJ reasoned that the extortion attempts were motivated by financial gain "rather than for any purpose in targeting the respondents based on their membership in a family unit." A.R. 56. And because the IJ found it "unclear" what drove the attempted kidnapping, noting it could have "simply

3

[been] an isolated criminal act," he concluded Ramos-Cruz did not sufficiently establish a link (often referred to in legal terms as a nexus) between that incident and the family PSG either. A.R. 57. Turning to the second PSG, the IJ initially remarked it was "not clear" whether Ramos-Cruz fit the group of "individuals who publicly provide assistance to law enforcement," as the police complaint he made was private, and nothing in the record suggested the individuals who threatened him knew he had filed it. A.R. 57. Moreover, because he went to the police only after the extortion and kidnapping attempts, Ramos-Cruz could not show he was targeted based on his membership in that PSG. *Id.* For similar reasons, the IJ found he could not establish an objectively reasonable fear of future persecution, making him ineligible for asylum and withholding of removal. Relief under the CAT also failed.

The BIA dismissed Ramos-Cruz's appeal. It discerned no clear error in the IJ's nexus determination, which was dispositive of the asylum and withholding claims, and also affirmed Ramos-Cruz's ineligibility for CAT protection. This petition for review followed.

II[2]

Our task is quite narrow. Ramos-Cruz does not seek review of the denial of CAT relief and thus has abandoned that claim. *See Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 432 n.4 (3d Cir. 2023). And because the agency's nexus finding, if supported by substantial evidence, disposes of his remaining claims, we need not entertain the challenges to the IJ's

---

[2] Our jurisdiction lies under 8 U.S.C. § 1252(a). Because the BIA "invoke[d] specific aspects of the IJ's analysis and factfinding" to support its conclusions, we review both decisions. *Thayalan v. Att'y Gen.*, 997 F.3d 132, 137 (3d Cir. 2021) (citation omitted).

credibility determinations or his conclusion that the threats Ramos-Cruz experienced do not amount to persecution.

To qualify for asylum, a petitioner must demonstrate "persecution or a well-founded fear of persecution on account of" a statutorily protected ground—here, membership in a PSG. 8 U.S.C. § 1101(a)(42)(A); § 1158(b)(1)(B)(i). That is the case "only if that ground 'was or will be at least one central reason for persecuting the applicant.'" *Thayalan v. Att'y Gen.*, 997 F.3d 132, 138 (3d Cir. 2021) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). Asylum is unavailable "when the characteristic at issue 'played only an incidental, tangential, or superficial role.'" *Id.* at 142 (quoting *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 685 (3d Cir. 2015)).

Ramos-Cruz's challenges to the IJ and BIA's nexus findings are unavailing. We agree that he cannot rely on the second PSG—putting aside whether he indeed is an individual who publicly assisted law enforcement—because any police complaint in May 2021 could not have motivated threats that predated it. And we find unpersuasive the argument that he and his family were indeed targeted because of their family membership.

Ramos-Cruz claims "it is irrelevant that the [extortionists'] motivation may start out as money" when they then target the family as a means to guaranteeing that their demands are met. Opening Br. 11-12; *see also id.* 14 ("[T]he persecution for money was in addition to the family unit motive given both the unwillingness of the family members to provide money or to join the criminal organization."). But while it's true that persecutors may have more than one motivation—a so-called "mixed-motive" case—the "at least one central reason" requirement still stands, and we must uphold the agency's finding on that issue if

5

substantial evidence supports it. *See Thayalan*, 997 F.3d at 142-43 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). Here, a reasonable factfinder could agree that the threats of extortion were driven by a desire for financial gain, and any family membership was purely incidental. To underscore the point, Ramos-Cruz testified that "these groups ask … people for money or try to get people to work with them *throughout Guatemala*," A.R. 50 (emphasis added), suggesting his family was not targeted specifically. And, like the IJ, we see no evidence one way or another indicating what motivated the individual who attempted to kidnap Ramos-Cruz's daughter. Under the requirement for "highly deferential" review, we thus are not "compelled to conclude" that family affiliation was a central reason for the abduction attempt. *Thayalan*, 997 F.3d at 137 (quoting *Nasrallah v. Barr*, 590 U.S. 573, 584 (2020)); *see Gonzalez-Posadas*, 781 F.3d at 685 (explaining "the applicant bears the burden of proving that one central reason for the persecution was a protected characteristic" (citation omitted)).

Moreover, while we credit Ramos-Cruz with a well-founded, subjective fear of future persecution, the law requires that fear to be objectively reasonable. *See Lukwago v. Ashcroft*, 329 F.3d 157, 175 (3d Cir. 2003). The IJ relied on substantial evidence in support of his finding that Ramos-Cruz or his family would not be singled out for persecution on account of family affiliation or his cooperation with law enforcement. Absent compelling evidence to the contrary, we are hard pressed to find error in that determination.

\* \* \* \* \*

Substantial evidence supports the IJ and BIA's decisions to deny Ramos-Cruz's requests for asylum and withholding of removal based on his inability to show that he was

6

targeted based on a protected ground, and the denial of CAT relief is not at issue. We thus deny the petition for review.