**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1089
_____

ERICA NOHEMI MANUEL-SOTO,
ELFEGO ISMAEL ESTRADA-SIMON,
D.E.E.-M., and E.I.E.-M.,

Petitioners

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
(Agency Nos. A216-974-950, A216-974-951,
A216-974-965, and A216-974-966)
Immigration Judge: Steve Mannion
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 8, 2024

Before: KRAUSE, BIBAS, and SCIRICA, *Circuit Judges*

(Filed: November 12, 2024)

_____

Stephanie M. Duque Isern
Jiana Lyn Paladino
DUQUE ISERN LAW LLC
4539 Bergenline Avenue
Union City, NJ 07087
        *Counsel for Petitioners*

Alanna Thanh Duong
Margot P. Kniffin
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
        *Counsel for Respondent*
_____

OPINION OF THE COURT
_____

BIBAS, *Circuit Judge*.

Petitioners, two parents and their children, are citizens of Guatemala. In 2021, the family entered the United States illegally. The government started removal proceedings. The family conceded removability but sought asylum, withholding of removal, and Convention Against Torture protection.

The family's troubles started back in Guatemala in 2014 when the mother, Erica Manuel-Soto, broke up with her violent boyfriend Axel and started dating the father, Elfego Estrada-Simon. When Axel learned of the new relationship, he sent her

threatening texts. Once, he hid behind a rock with a gun, lying in wait for the mother and father, but a neighbor dissuaded him from shooting at them. At the start of 2015, the mother and father married. On their wedding day, Axel tried to come to the wedding with a gun, but the same neighbor stopped him.

Because Axel belonged to a gang, the mother never reported him to the police. She has not seen or heard from him since her wedding day. The father has often seen Axel on the street; Axel would glare at him but never tried to hurt him.

Unrelatedly, the family had problems with their businesses. Once, when the father complained that suspected gang members had given him a bad check, they threatened him, saying they knew "where his family lived." AR 147. And when the family opened a store, apparently the same people repeatedly called them and extorted money. Though at first police declined to investigate because of the Covid pandemic, eventually in June 2021 they took a report and investigated. But a month later, after another extortion call, the family left for the United States.

The immigration judge considered all this information, then found the mother and father's testimony credible but denied relief and ordered the family removed. The Board of Immigration Appeals affirmed.

We review the agency's factual findings for substantial evidence, deferring "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Herrera-Reyes v. Att'y Gen. of U.S.*, 952 F.3d 101, 106 (3d Cir. 2020). We review legal issues de novo. *Herrera-Reyes*, 952 F.3d at 106.

Neither of petitioners' proposed particular social groups works. First, they say they are "Guatemalan small business owners, victims of extortion by gang members." AR 4. But this group is not defined with particularity; the criteria and limits that qualify a business as "small" are fuzzy, if not subjective.

Nor, as the Board found and our sister circuits agree, is this category immutable: one can stop owning a small business and so leave this group for good. *Canales-Rivera v. Barr*, 948 F.3d 649, 657–58 (4th Cir. 2020); *see also Macedo Templos v. Wilkinson*, 987 F.3d 877, 882–83 (9th Cir. 2021). True, being a *former* small-business owner might be immutable. *See Garcia v. Att'y Gen. of U.S.*, 665 F.3d 496, 504 (3d Cir. 2011); *Plancarte Sauceda v. Garland*, 23 F.4th 824, 834 (9th Cir. 2022). Yet petitioners did not define their proposed social group that way, and they offered no evidence that it would be a lingering status inviting further persecution (as with kulaks in the Soviet Union). That said, being small-business owners would still be an immutable trait if—like a religion—it were so fundamental to petitioners' identity that they should not be required to change it. *Escobar v. Gonzales*, 417 F.3d 363, 367 (3d Cir. 2005). But there was no testimony or evidence that raising farm animals was crucial to petitioners' identity; counsel simply asserted that. We thus join our sister circuits in holding that, as a general rule, small-business owners are not a cognizable particular social group.

Petitioners' inclusion of the phrase "victims of extortion by gang members" does not cure this proposed group's defects. AR 4. A particular social group must "exist independently of the persecution suffered by the applicant." *Lukwago v. Ashcroft*, 329 F.3d 157, 172 (3d Cir. 2003).

Second, petitioners invoke the group of "Guatemalan women viewed as property and unable to escape their violent ex-partners." AR 4, 56–57. Though that group may be cognizable, petitioners did not appeal the immigration judge's finding that they do not belong to it. And in any event, the immigration judge's finding was reasonable. The father and children are not women. And the mother was able to escape Axel; after her wedding in 2015, she never heard from him again.

Even if one of those groups were cognizable, that would not be enough. Petitioners would still lose because the Guatemalan government was willing and able to protect them. They never reported Axel's conduct to the police and never showed that doing so would have been futile or dangerous. Indeed, local police had arrested him for other crimes. And though there is violence against women in Guatemala, the State Department's country-conditions report shows that the Guatemalan government takes it seriously. Substantial evidence supported the agency's denial of asylum and withholding.

Petitioners' Convention Against Torture claim likewise fails. We review the agency's findings of fact for substantial evidence and its legal conclusion that those facts did not amount to torture or government acquiescence de novo. *Nasrallah v. Barr*, 590 U.S. 573, 586 (2020); *Myrie v. Att'y Gen. of U.S.*, 855 F.3d 509, 515–17 (3d Cir. 2017). As the immigration judge found, the threats and extortion never rose to the level of torture. And the country-conditions evidence shows that the government would not acquiesce in any mistreatment. On the contrary, when petitioners reported extortion threats as the pandemic subsided, police responded and followed up. Because the agency properly found the facts and

5

correctly applied the law in denying this relief, we will deny the petition.