**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-1363

_____

CONSUELO DE MARIA MEJIA ROMERO,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A202-177-777)
Immigration Judge: Arya Ranasinghe

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 12, 2026

Before: MATEY, CHUNG and AMBRO, <u>Circuit Judges</u>

(Opinion filed: January 21, 2026)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

AMBRO, <u>Circuit Judge</u>

Consuelo de Maria Mejia Romero petitions for review of an order of the Board of Immigration Appeals (BIA) affirming the denial of her applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We deny the petition for the reasons that follow.

**I**

Mejia Romero is a citizen of Guatemala. She opened a beauty salon there in 2011 and operated it for four years until she left for the United States in April 2015. In a written declaration, she stated that "gangs in Guatemala would frequent the beauty salon and demand money" and that she "was threatened by the gangs on several occasions." A.R. 401-02. Testifying in court, she walked back those statements. She told the Immigration Judge (IJ) that she had no issues with gangs other than two incidents in March 2015.

In the first incident, two gang members entered Mejia Romero's salon and demanded all her money at gunpoint. She gave them 500 quetzales, which was all she had at the time. They threatened that she "should know what is going to happen to [her]" if she did not give them 15,000 quetzales the next time they returned. A.R. 110. A few days later, the same two gang members returned to her business, took her purse, and pushed her down a flight of stairs. Mejia Romero testified that she reported the assault to the local police, and they told her they could not do anything about it. Fearing for her life, she fled to the United States in April 2015. She presented a counterfeit visa when she entered.

2

The Department of Homeland Security (DHS) charged Mejia Romero with removability under 8 U.S.C. § 1182(a)(6)(C)(i) for seeking entry into the United States by fraud or willfully misrepresenting a material fact, and under § 1182(a)(7)(A)(i)(I) as an alien not in possession of a valid entry document. She conceded removability and applied for asylum, withholding of removal, and relief under the CAT. The IJ found her partially credible and denied her applications, and the BIA affirmed. Her petition before us challenges the BIA's decision.

## II[1]

We review the BIA's legal conclusions de novo and its factfinding under the substantial evidence standard. *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 434 n.17 (3d Cir. 2023). Applying that standard, we must affirm the BIA's findings if any reasonable fact finder could reach the same result based on the administrative record. *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003); *see Kang v. Att'y Gen.*, 611 F.3d 157, 164 (3d Cir. 2010) (explaining that reversal is warranted in this context only if the evidence "compels" a different result).

The BIA affirmed the IJ's adverse credibility determination and denied Mejia Romero's applications for relief on that basis and, alternatively, on the merits. Substantial evidence supports the adverse credibility determination. The agency noted that Mejia Romero stated in a written declaration that gangs would "frequent" her beauty salon to demand money, A.R. 401, that she was "threatened by the gangs on several occasions,"

---

[1] We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1).

A.R. 161, and in a separate oral statement that "[s]ome gang members used to go to my business and ask for money."[2] A.R. 453. But, to repeat, she later testified that she had no problems with gangs until two incidents in March 2015, just before she left Guatemala. A fact finder could reasonably conclude that testifying to only two run-ins with gang members, both in the same month as each other, is inconsistent with characterizing gang visits to her beauty salon as "frequent." The BIA noted the discrepancy between her statements, and as fact finder, it was free to ground an adverse credibility determination in "the consistency between the applicant's . . . written and oral statements[,] . . . and any inaccuracies or falsehoods in such statements." 8 U.S.C. § 1158(b)(1)(B)(iii). The record does not compel a conclusion different from the BIA's.[3]

We note, however, that the IJ qualified her adverse credibility determination. Despite drawing the adverse inference, she found that Mejia Romero "testified credibly about the incident in which the men extorted her and later injured her by pushing her down a set of stairs." A.R. 41. And she characterized Mejia Romero's testimony as "partially credible" based on that finding. *Id*. The BIA did not address the effect of these qualifications on the IJ's disposition of the claims. For good measure, we therefore treat

---

[2] The IJ incorrectly noted that Mejia Romero made this statement during her credible fear interview. As the BIA points out, she made the remark in a separate sworn statement taken by the DHS. The IJ's error was harmless. *See Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011) (explaining that harmless error analysis applies in this context).
[3] The IJ found other aspects of Mejia Romero's testimony inconsistent and implausible, and the BIA affirmed those findings as well. Because the inconsistency we addressed is sufficient to support the BIA's conclusion, we need not address the agency's additional grounds for its adverse credibility determination.

her testimony regarding the March 2015 assaults as credible and further consider the BIA's alternative merits-based grounds for denying her applications for relief.

**Asylum and Withholding of Removal**

To establish eligibility for asylum, Mejia Romero must show she is "unable or unwilling to return to [Guatemala] . . . because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Persecution "denotes extreme conduct," and "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful." *Voci v. Gonzales*, 409 F.3d 607, 614 (3d Cir. 2005) (citation modified). The IJ characterized the assaults against Mejia Romero as "ordinary isolated criminal acts," A.R. 43, and concluded they did not constitute past persecution. We agree.

We have explained that "isolated criminal acts do not constitute persecution on account of a protected characteristic." *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 685 (3d Cir. 2015). The record contains no evidence the assaults on Mejia Romero were motivated by her race, religion, nationality, membership in a particular social group, or political opinion, and thus without more they cannot qualify as persecution.[4] *See Shehu v.*

---

[4] Mejia Romero claims she was persecuted because of her membership in a social group consisting of "unprotected single women of Guatemala who own businesses that are economically marginalized, socially isolated, stigmatized, and persecuted by violent gangs operating in a male dominated patriarchal culture that act with impunity and perpetuate violence against these women who oppose this gender-based violence and sociopolitical structure." Opening Br. 19. That definition circularly defines the group's membership as including only those "persecuted by violent gangs." Because she demarcates the group's boundaries by the harm its members face—including economic marginalization, social isolation, and stigmatization—rather than features that make the group socially distinct within Guatemalan society, it is not cognizable for asylum

5

*Att'y Gen.*, 482 F.3d 652, 657 (3d Cir. 2007) (concluding that a petitioner could not reasonably fear persecution when a gang targeted him based on a "desire for money" rather than a protected characteristic); *Abdille v. Ashcroft*, 242 F.3d 477, 494 (3d Cir. 2001) (holding that "random street violence, motivated not by animosity against a particular . . . group, but rather by . . . a desire to reap financial rewards," does not constitute persecution). And because she did not establish past persecution, Mejia Romero is not entitled to a presumption that she has a well-founded fear of future persecution. *See Lukwago v. Ashcroft*, 329 F.3d 157, 174 (3d Cir. 2003).[5] She is therefore ineligible for both asylum and withholding of removal. *See Cortez-Amador*, 66 F.4th at 434 ("If a petitioner cannot meet h[er] burden to establish a risk of persecution for asylum, [she] automatically fail[s] on [her] withholding claim.").

### **Relief under the Convention Against Torture**[6]

To demonstrate eligibility for CAT protection, Mejia Romero must "establish that it is more likely than not that . . . she would be tortured if removed" to Guatemala. *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017) (citation omitted). The BIA found that she

---

purposes. *See Lukwago v. Ashcroft*, 329 F.3d 157, 172 (3d Cir. 2003) (requiring social groups to "exist independently of the persecution suffered by the [petitioner]" in order to be cognizable as a social group).

[5] Mejia Romero also argues that the IJ failed to consider whether she had a well-founded fear of future persecution based on imputed anti-gang political opinion. The BIA declined to consider that argument based on the IJ's adverse credibility determination and its alternative merits determinations. Because the adverse credibility determination is dispositive of Mejia Romero's applications for asylum and withholding of removal, *Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir. 2003), we need not remand to the agency to consider this additional argument on the merits.

[6] The adverse credibility determination is not dispositive of Mejia Romero's claim for relief under the CAT. *See Tarrawally v. Ashcroft*, 338 F.3d 180, 188 (3d Cir. 2003).

failed to meet her burden, and we agree. Other than the March 2015 assaults, the only additional evidence Mejia Romero points to is the pervasiveness of gang violence across Guatemala and her testimony that several family members were killed there. While undoubtedly tragic, that evidence does not compel us to conclude that Mejia Romero carried her burden. The record lacks any "specific evidence" that she is more likely than not "to be singled out" for torture. *Hernandez Garmendia v. Att'y Gen.*, 28 F.4th 476, 484 (3d Cir. 2022).

*     *     *

Substantial evidence supports the BIA's decision to deny Mejia Romero's applications for asylum, withholding of removal, and CAT protection. Accordingly, we deny her petition for review.