# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-1404

OSMAN ALEJANDRO CORDON-OSARIO,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review from a Decision of the
Board of Immigration Appeals
Immigration Judge Mary C. Lee, No. A216-371-648

Before: KRAUSE, MASCOTT, and FISHER , *Circuit Judges*
Submitted Mar. 12, 2026; Decided Apr. 28, 2026
_____

NONPRECEDENTIAL OPINION[*]

KRAUSE, *Circuit Judge.*   Petitioner Osman A. Cordon-Osario, a Guatemalan citizen, seeks review of the Board of Immigration Appeals' decision upholding the Immigration Judge's denial of his applications for withholding of removal under the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(b)(3), and for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85; 8 C.F.R. §§ 1208.16-1208.18 (implementing regulations).  Because substantial evidence supports the agency's denial of relief, we will deny the petition for review.

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

## I. DISCUSSION[1]

### A. Withholding of Removal

On appeal, Cordon-Osario challenges the agency's denial of withholding of removal on two grounds: First, that he established past persecution on account of his membership in a particular social group giving rise to a presumption of future persecution if removed to Guatemala. *See* 8 C.F.R. § 1208.16(b)(1). Second, that he established he would suffer future persecution, i.e., his life or freedom would be threatened on account of his membership in a particular social group, in Guatemala. *See* 8 U.S.C. § 1231(b)(3)(A). We disagree on both fronts.

#### 1. Past Persecution

Cordon-Osario contends that he suffered past persecution, entitling him to a rebuttable presumption that his life or freedom would be threatened in Guatemala. *See* 8 C.F.R. § 1208.16(b)(1). Persecution "connotes extreme behavior, including threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 434 (3d Cir. 2023) (citation modified). Because we consider the "cumulative effect" of a petitioner's experiences when determining if they rise to the level of persecution, each incident must be "assessed within the overall trajectory of the harassment." *Herrera-Reyes v. Att'y Gen.*, 952 F.3d 101, 106-07 (3d Cir. 2020), *abrogated on other grounds by Urias-Orellana v. Bondi*, 146 S. Ct.

---

[1] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction under 8 U.S.C. § 1252(a)(1). Where, as here, the BIA expressly adopts the IJ's reasoning when issuing its own decision on the merits, we review both agency decisions. *Hernandez Garmendia v. Att'y Gen.*, 28 F.4th 476, 482 (3d Cir. 2022).

845 (2026) (citation modified). Threats within that overall trajectory, absent physical harm, can establish persecution only if they are so "concrete and menacing" as to "pose[] a severe affront to the petitioner's life or freedom." *Id.* at 108 (citation modified). The question of whether an asylum applicant has demonstrated past persecution is a mixed question reviewed under the substantial evidence standard. *See Urias-Orellana*, 146 S. Ct. at 851.

Here, Cordon-Osario argues that he experienced persecution when he was extorted five to six times by members of Mara Salvatrucha (MS), a local gang, then hit on the lip with a gun when he no longer had the financial ability to comply with the gang's extortion demands. Substantial evidence supports the agency's determination that Cordon-Osario's experiences, while "not insignificant," did not rise to the level of persecution. A.R. 3. Although Cordon-Osario received death threats from gang members, those threats were not corroborated by evidence of serious "harm to [Cordon-Osario] or those close to him" or by escalation in the "overall trajectory" of the gang's extortion demands. *Herrera-Reyes*, 952 F.3d at 108 (citation modified); *cf. id.* at 109 (determining that the petitioner established past persecution through "the cumulative effect of the destruction of [her] home, the shooting of her convoy, the murder of her political compatriot, [an] armed robbery . . . , and [a] verbal death threat").

## 2. Threat to Life or Freedom on Account of Membership in a Particular Social Group

Cordon-Osario next argues that he established his life or freedom would be threatened in Guatemala on account of his membership in either of two particular social groups

(PSGs): "(1) individuals who lived and worked in the United States; and (2) members of [his] family."[2] Opening Br. 9. The Government argues that Cordon-Osario did not exhaust these arguments because he proposed only one distinct PSG in his agency proceedings: "people victimized by gangs in Guatemala because of their perceived association with the United States and such persons would not receive assistance by the police because the police could not or would not control the gangs." A.R. 54.

Under 8 U.S.C. § 1252(d)(1), a petitioner must have "exhausted all administrative remedies available . . . as of right" before seeking our review. *See Gomez-Gabriel v. Att'y Gen.*, 146 F.4th 327, 330 (3d Cir. 2025) ("Although we no longer treat § 1252(d) as a jurisdictional bar, once the government raises the issue, we must enforce it."). The standard for exhaustion "is not high; we require only that the petitioner makes some effort, however insufficient, to place the [BIA] on notice of a straightforward issue being raised on appeal." *Id.* (citation modified). But Cordon-Osario did nothing to put the agency on notice that he would later argue he was persecuted for being a "member[] of [his] family," so this argument is foreclosed from appellate review.[3] Opening Br. 9.

---

[2] Before the IJ and BIA, Cordon-Osario argued that he also feared persecution on account of his political opinion. Cordon-Osario did not raise this argument in his opening brief, and he mentioned it only cursorily in his reply brief, so it is forfeited. *See Tr. Under Tr. of Charles G. Berwind Tr. v. Comm'r of Internal Revenue*, 158 F.4th 497, 513 n.14 (3d Cir. 2025).

[3] Even assuming Cordon-Osario had exhausted this argument, it would fail because it is premised on the notion that he would be targeted "due to [his] family['s] United States ties," Opening Br. 17, and being "perceived as having access to wealth due to United States ties," Opening Br. 15, but as explained below, these assertions do not articulate a cognizable PSG.

4

Cordon-Osario's remaining PSG, "individuals who lived and worked in the United States," Opening Br. 9, is sufficiently related to the PSG he articulated to the agency that it satisfies our liberal exhaustion policy, but the PSG itself is not legally cognizable. To establish membership in a legally cognizable PSG, a petitioner must show that the proposed group is "(1) composed of members who share a common, immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Herrow v. Att'y Gen.*, 93 F.4th 107, 119 (3d Cir. 2024) (citation modified). Immutable characteristics are those that "cannot be changed or should not be required to be changed as a matter of conscience to avoid persecution." *Id.* (citation modified). A group is particularized if it is "discrete" and "has definable boundaries—as opposed to being overbroad, diffuse, or subjective." *Id.* (citation modified). Lastly, to be socially distinct, there must be "evidence that the society in question recognizes a proposed group as distinct." *Id.* (citation modified).

Here, as the BIA recognized, Cordon-Osario's proposed PSG fails to satisfy either the "particularity" or "social distinction" requirements. A.R. 4. Cordon-Osario contends that individuals who lived and worked in the United States are identifiable "through accents, behavior, and clothing," and that Guatemalan society views such individuals as distinctly "wealthy" or "Americanized." Opening Br. 15. Yet we and other courts have rejected such PSGs as "too amorphous." *Khan v. Att'y Gen.*, 691 F.3d 488, 498 (3d Cir. 2012) (rejecting a PSG of "Pakistanis who have become more acculturated to American culture,

5

language and values than those of Pakistan" (citation modified)).[4] And to the extent that the proposed PSG is based on a perception in Guatemalan society that those with United States connections have money, it is not cognizable because individuals targeted "out of a simple desire for money" cannot establish that they suffered persecution *because of* their membership in a PSG. *Gomez-Gabriel*, 146 F.4th at 332 (quoting *Thayalan v. Att'y Gen.*, 997 F.3d 132, 144 (3d Cir. 2021)); *see also Matter of A-M-E- & J-G-U-*, 24 I. & N. Dec. 69, 77 (BIA 2007) (holding that "affluent Guatemalans" did not qualify as a cognizable PSG under the INA).

In sum, because Cordon-Osario failed to establish past persecution or show that his "life or freedom would be threatened" in Guatemala because of his "membership in a particular social group," we will not disturb the agency's denial of his application for withholding of removal. 8 U.S.C. § 1231(b)(3)(A).

## B. Protection Under CAT

Cordon-Osario also contends that he is entitled to protection under CAT because he "provided substantial evidence that if removed to Guatemala, [he] faces a high probability of being tortured by MS gang members." Opening Br. 19. Although the IJ improperly placed the burden on Cordon-Osario to establish that internal relocation is not possible, the record does not entitle Cordon-Osario to relief.

---

[4] *See also Lizama v. Holder*, 629 F.3d 440, 446 (4th Cir. 2011) (rejecting a PSG consisting of "young, Americanized, well-off Salvadoran male deportees with criminal histories who oppose gangs"); *Ahmed v. Holder*, 611 F.3d 90, 94 (1st Cir. 2010) (rejecting a PSG consisting of "secularized and westernized Pakistanis perceived to be affiliated with the United States").

An applicant for protection under CAT must establish "by specific evidence that [he] is more likely than not to be singled out" for torture if removed to the proposed country of removal. *Hernandez Garmendia v. Att'y Gen.*, 28 F.4th 476, 484 (3d Cir. 2022); 8 C.F.R. § 1208.16(c)(2). When assessing the likelihood of torture, the IJ must address both "what is likely to happen to the petitioner if removed," and whether that likely outcome "amount[s] to the legal definition of torture." *Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017); *see also Herrow*, 93 F.4th at 113 (noting that torture under CAT requires, in part, "an act causing severe physical or mental pain or suffering"). In that analysis, the IJ should consider all relevant evidence "including, but not limited to: [e]vidence of past torture inflicted upon the applicant; [e]vidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;" and evidence of human rights violations and other conditions in the country of removal. 8 C.F.R. § 1208.16(c)(3).

Here, the IJ recognized that Cordon-Osario's "possibly being killed by the gangs in Guatemala" would "certainly fall under the definition of torture" but concluded that the record did not show such torture was more likely than not to occur. A.R. 55. Specifically, the IJ noted that Cordon-Osario "has not met his burden in the CAT context to demonstrate why he could not relocate to another part of Guatemala where torture is not likely," and determined that Cordon-Osario did not suffer past harm amounting to torture. A.R. 55.

The IJ erred by placing the burden on Cordon-Osario to prove that he could not relocate to another part of Guatemala. Unlike in the asylum context where we employ a burden-shifting approach to assess a petitioner's ability to relocate within his home country, internal relocation is just one factor to consider in the CAT analysis. *See Manning*

*v. Barr*, 954 F.3d 477, 488 (2d Cir. 2020); *Maldonado v. Lynch*, 786 F.3d 1155, 1163-64 (9th Cir. 2015). Here, the limited record evidence about relocation suggests Cordon-Osario could relocate to another part of Guatemala where he would not face a likelihood of torture. *See* A.R. 125. But that underdeveloped factor is not dispositive.

Other evidentiary factors also show that Cordon-Osario is not entitled to protection under CAT. First, Cordon-Osario did not suffer past harm amounting to torture. We have previously held that repeated threats and extortion by Guatemalan gangs does not rise to the level of torture, *Manuel-Soto v. Att'y Gen.*, 121 F.4th 468, 472 (3d Cir. 2024), and the isolated injury to Cordon-Osario's lip is insufficiently "severe" to constitute torture, *Herrow*, 93 F.4th at 113. Second, Cordon-Osario did not provide specific evidence that he is likely to be "singled out" for torture. *Hernandez Garmendia*, 28 F.4th at 484; *cf. Herrow*, 93 F.4th at 114 (providing evidence that returnees to Somalia are easily identified by Al Shabaab and that fifty-five percent reported being tortured upon return). Although Cordon-Osario argues that MS's recent murder of his teenage cousin supports his "fear that MS will target Petitioner with similar brutality," Opening Br. 19, the record evidence suggests that Cordon-Osario's cousin was targeted for refusing to join the gang, not because of his relation to Cordon-Osario, *see* A.R. 178.

## II. CONCLUSION

For the foregoing reasons, we will deny Cordon-Osario's petition for review.

8